CASE 48—PETITION ORDINARY—SEPTEMBER 21.

# Donley vs. Hall & Long.

APPEAL FROM GALLATIN CIRCUIT COURT.

1. H. & L., by contract in writing, agreed to purchase of D. all the whisky made and to be made at his distillery, and to allow him one half of the profit over and above the price paid, deducting charges, &c. This contract did not make H. & L. partners of D. in the business of manufacturing whisky; and as such, liable to a third party for barrels furnished to D., who, without the knowledge of H. & L., was conducting his business in the name of D. & Co.

2. H. & L., having denied any partnership with D., and no act or contract of theirs being proved, which conduced or was sufficient to show the existence of such partnership, the acts, statements, &c., of D. to others, were not admissible against them to show a partnership, or

Donley vs. Hall & Long.

any liability on their part, to the party who furnished the barrels to D. as above.

3.  That, to the extent D. was interested in the profits, H. & L. were his agents in the above transaction.

J. J. LANDRAM and
JOHN L. SCOTT,                                For Appellant,
                        CITED—
3 *Dana*, 333 ; *Story vs. Moon & Taylor*.
*Story on Partnerships*, secs. 58, 38, 16, 18, 24, 33, 34, 63 *to* 70.
*Smith's Mercantile Law*, pp, 44, 48.
7 *Dana*, 369; *J. & H. P. Saufley vs. H. & W. G. Howard*.
2 *Black*, 998 ; *Grace vs. Smith*.
17 *Ves.*, 404; 18 *Ves.*, 301.
16 *Johnson's Rep.*, 40 ; *Webb vs. Halsey*.
6 *J. J. Mar.*, 612 ; *Craig vs. Alverson*.
14 *Johnson*, 34 ; *Dob vs. Halsey*.
*Wheaton's Selwyn*, 801.
*Chitty on Contracts*, 70.
*Bissit on Partnerships*, pp. 4 *to* 10.

SAML. RUSSELL,                              For Appellees.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

This action was brought originally by appellant against M. S. Dehoney and appellees, for a balance due him for a certain number of whisky barrels delivered by him, under an alleged contract made with Dehoney, for their benefit, as partners engaged in the manufacture of whisky and flour, in the town of Warsaw.

After the institution of the action by appellant Donley, it was discontinued as to Dehoney, and his deposition was taken and read as evidence on the trial.

Appellees deny the alleged partnership in their answer; and after all the evidence was heard on the trial in the circuit court, the judge instructed the jury peremptorily to find for the defendants, and the propriety of that instruction is called in question by this appeal.

No direct evidence, either written or verbal, of an agreement to form a partnership by these parties, was offered; nor an entry in any book kept by them, or either of them, to that effect, was produced; but certain facts and circumstances were proved, which will be specially noticed hereafter, and relied upon as establishing a partnership *inter sese;* and if not sufficient for that purpose, it is insisted that the evidence is sufficient to render them liable, as partners, to third persons.

Posters and advertisements for grain and other articles, necessary to carry on the business, were signed " *Dehoney & Co.*," and the brands on barrels containing the manufactured articles were in the same name ; and although Dehoney proves that appellees were not his partners, he does not give a very satisfactory reason for the signatures and brands having been thus made.

In addition to the foregoing, a writing, signed by Dehoney and held by appellees, dated August 30, 1867, to the following effect, was read as evidence :

" I have this day sold to Hall & Long all the whisky made and to be made at my distillery at Warsaw, Kentucky, at thirty-five cents per gallon, on the following conditions: They are to receive, store, and sell the whisky at usual charges and commissions, and to allow me one half profit over and above thirty-five cents, after deducting charges and commissions. Hall & Long have the privilege of discontinuing this arrangement at any time by giving me ten days' notice."

Various notes and due bills, executed for wood and grain, and signed " *M. S. Dehoney & Co.,*" were also read in evidence.

How, or by whose instrumentality, the words "*& Co.*" were added after the name of Dehoney, does not appear, otherwise than as explained by Dehoney himself. There is no evidence that it was done with the knowledge or consent of Hall & Long, or that they knew to whom the words "*& Co.*" referred. But appellant insists that the stipulation in the writing referred to, that Dehoney was to have one half of the profits, after deducting thirty-five cents on the gallon, the amount advanced on the whisky, and charges and commissions on storage and sales, constituted them partners, and made them liable to third persons as such ; and to sustain this position *section* 58, *Story on Partnership, and Smith's Mercantile Law, pp.* 44 *and* 48, are relied upon. In the section cited Justice Story states the principle, that where one person advanced funds for carrying on a particular trade, and another his *personal services only*, and was to receive a proportion of the net profits, they are held to be partners *inter sese,* as well as to third persons, for the reason that, by taking a part of the profits, he takes from creditors a part of that fund which is the security for the payment of their debts.

The principle here enunciated is applicable to cases where one person advances funds to carry on a particuular trade or business, and another gives his personal services, for which he is to receive a portion of the profits. Such agreements may constitute a partnership, both as regards the parties themselves and third persons. But admitting the principle as broadly as stated, does it apply to and govern this case? No labor was to be advanced by appellees. The transaction between the

parties, as evidenced by the writing between them, was a sale of the manufactured article by one of the parties to the other for a denominated sum, and one half of what it might be sold for, over and above the sum paid, and the costs and charges of a resale; this half of the excess was nothing more nor less than a part of the price agreed to be paid for the article, contingent in its character; and to the extent that Dehoney was interested in said profits, Hall & Long were his agents.

By the terms of the contract, it must be manifest that the parties had no intention to create a partnership in the business of manufacturing whisky. And in reference to this class of cases, as remarked by Mr. Justice Story, "the question is, first, to arrive at the intention of the parties *inter sese;* and *secondly*, if between themselves there is no intention to create a partnership, whether there is any stubborn rule of law which will, nevertheless, as to third persons, make a mere participation in the profits conclusive that there is a partnership.

"It is said, every man who has a share in the profits of a trade ought also to bear his share of the loss as a partner. In a just sense, this language is sufficiently expressive of the general rule of law; but it is assuming the very point in controversy to assert that it is universally true, or that there are no qualifications or limitations, or exceptions to it. On the contrary, the very cases alluded to by Lord Eldon, in the clearest terms, establish that such qualifications, limitations, and exceptions, do exist.

"Admitting, however, that a participation in the profits will ordinarily establish the existence of a partnership between the parties in favor of third persons, in the absence of all other opposing circumstances, the question is, whether the circumstances under which the par-

ticipation exists may not qualify the presumption, and satisfactorily prove, that a portion of the profits is taken, not in the character of partner, but in the character of an agent, as mere compensation for labor and services. If the latter be the true predicament of the party—and the whole transaction admits, nay requires, that very interpretation—where is the rule of law which forces upon the transaction the opposite interpretation, and requires an agency to be a partnership, contrary to the truth of the facts and the intention of the parties?"

Now it is precisely upon this very ground that no such absolute rule exists, and that it is a mere presumption of law, which prevails in the absence of controlling circumstances, but is controlled by them, that the doctrine in the authorities alluded to is founded; and there is no hardship upon third persons, since the party does not hold himself out as more than an agent.

This qualification of the rule (the rule itself being built upon an artificial foundation) is, in truth, but carrying into effect the real intention of the parties; and would seem far more consonant to justice and equity than to enforce an opposite doctrine, which must always carry in its train serious mischiefs or ruinous results never contemplated by the parties. (*Story's Partn.*, *secs.* 36, 38.)

If there are exceptions to the rule established for a particular class of cases, built, as is said, "upon an artificial foundation," courts would be reluctant to extend the rule to embrace cases of a different class, and pronounce parties partners in trade contrary to their intention, and when they have never held themselves out as such.

No such connection in business between Dehoney and appellees was established as to authorize the admission

of the statements made by Dehoney to others as evidence against appellees; and without them the evidence did not conduce, or certainly was not sufficient, to show the existence of a partnership between them and Dehoney.

But even if we should be mistaken in the foregoing view, we would be constrained to sustain the judgment.

Although every material allegation of the petition is specifically denied in the answer in the most direct terms, there is no proof of any contract for whisky barrels with Dehoney, no proof of a delivery of any, nor, indeed, any proof sufficient to charge *Dehoney*.

The other question seems to have absorbed the attention of the attorneys; and evidence of the sale and delivery of the barrels, and their value, wholly omitted; so that, as the record stands, the instruction given was eminently proper.

Wherefore, the judgment must be *affirmed*.