Fuqua & Smith v. Massie & Sons.

---

CASE 68—PETITION ORDINARY TRANSFERRED TO EQUITY—
MARCH 17.

## Fuqua & Smith v. Massie & Sons.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. PARTNERSHIP.—The fact that one is to receive a certain part of the profits of a business in consideration of his services, and also in consideration of his furnishing a house in which to carry on the business, does not constitute him a partner.
2. MASTER AND SERVANT—LIABILITY OF SERVANT FOR BREACH OF CONTRACT.—Where an employe by his dishonest practices compels his employer to discharge him, he is to be treated as having voluntarily refused to comply with his contract, and is liable in damages to his employer for the breach of contract.

C. S. WALKER FOR APPELLANTS.

1. The court was right in deciding that appellants and appellees were not partners in the tobacco, but was wrong in holding that they were

Fuqua & Smith v. Massie & Sons.

partners in the commissions. (1 Bates on Partnership, secs. 1, 17, 19, 20, 21, 22, 23; Beecher v. Bush, 45 Mich., 188; s. c., 40 Am. Rep., 468; Boston & Colorado Smelting Co. v. Smith, 13 R. I., 27; s. c., 43 Am. Rep., 7; Babcock & Son v. Deposit Bank, 5 Ky. Law Rep., 516; Donley v. Hall & Long, 5 Bush, 549; Lafon v. Chinn, 6 B. M., 305; Heran v. Hall, 1 B. M., 159; Russell v. Gray's Ex'or, 4 Ky. Law Rep., 619; Barghman v. Portman, 12 Ky. Law Rep., 342; 17 Am. & Eng. Ency. of Law, p. 834.)

2. The court erred in allowing appellees to recover as if they had fully performed their contract, or rendered the services stipulated, and basing their compensation upon the amount of tobacco actually put up by appellants, although they had rendered no service or assistance in putting it up. Appellees, if entitled to anything on account of services, can recover compensation only for the value of their services actually rendered, subject, by way of recoupment, to the damages sustained by appellants by the former's breach of duty in their employment, which not only justified the discharge, but made it necessary. (Wood on Master and Servant, pp. 166, 221, 222, 210, 252; 14 Am. & Eng. Ency. of Law, pp. 788, 789, 790, 793, 794; Gen. Stats., chap. 112, sec. 5; Foster v. Watson, 16 B. M., 384; Whitaker v. Sandifer, 1 Duv., 262; Western v. Sharpe, 14 B. M., 178; 2 Sutherland on Damages, pp. 454, 455, 456, 457, 468, 469, 476, 477, 473, 474; 2 Sedgwick on Measure of Damages (7th ed.), pp. 82, 83, 84; Jewell v. Thompson, 2 Litt., 52; Wright v. Wright, 1 Litt., 179; Morford v. Ambrose, 3 J. J. Mar., 688; McLure v. Rush, 9 Dana. 65; Taylor v. Patterson, 9 La. Ann., 251; Escott & Son v. White, 10 Bush, 172; Hill & Perkins v. Hager Bros., 7 Ky. Law Rep., 518, 519.)

SWEENEY, ELLIS & SWEENEY FOR APPELLEES.

No brief in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellants, Fuqua & Smith, made this contract with John Massie & Sons: "Whereas, Fuqua & Smith have secured an order for 400 or 500 hogsheads of strips, to be put up in Owensboro, Ky. Now, in consideration of John Massie & Sons leasing to Fuqua & Smith their tobacco factory in the suburbs of the eastern part of Owensboro, and the further consideration of their putting in their services to assist in the purchase and putting up said tobacco, the said Fuqua & Smith agree to give them

Fuqua & Smith v. Massie & Sons.

(John Massie & Sons) one half interest in the commis-
sions on putting up said tobacco, after paying all ex-
penses.

"Said Massie & Sons agree that Fuqua & Smith shall
take the prior leaf and lugs of their purchase already re-
ceived at cost originally paid by them, and Fuqua &
Smith are to have the entire charge and management of
the purchase and handling of said tobacco; and they are
to assume the outstanding contracts of John Massie &
Sons on all prior tobacco they may have contracted for
in the county and not yet delivered."

This contract was evidenced in writing on the 1st of
April, 1889, although entered into shortly before that
date.   On the 7th of August of that year, Massie & Sons
brought this action to recover on the tobacco sold the
appellants under the contract, and also the value of some
tobacco they had raised, as well as to recover damages for
other breaches of the contract by the appellants, the
main breach alleged being the discharge by the appellants
of the appellees from their service, and their refusal to
allow the appellees to assist in purchasing and putting up
the 400 or 500 hogsheads of strips, for which the appel-
lants were to allow the appellees one half the commissions
that amounted, as is alleged, to $3,675—their half.

It is averred, and the proof shows, the appellees were
discharged from the service of the appellants on the 18th
of May, 1889, long before the tobacco was put up in hogs-
heads so as to comply with the order, and they are, there-
fore, claiming their right to the profits upon the terms
set forth in the contract; alleging that their discharge
was without cause, and averring a readiness on their part
to comply with the agreement.   The defense, or that

principally relied on, in regard to the tobacco of the appellees hanging in the barn at the time of the purchase, is that the tiers of tobacco on the outside of the barn were filled with good tobacco, and on the inside the tiers were filled with an indifferent quality of tobacco; that the tobacco at the time of the purchase was very dry and could be examined only on the outside, the plaintiffs (appellees) representing that it was all of a like quality, when they knew the tobacco on the inside was of an inferior quality; that the appellants relied on the representations of the appellees as to the quality of the tobacco on the inside of the barn or beyond the front tiers, and made the purchase upon the belief and the representations of the appellees that the tobacco to be seen was a fair average of the quality.

As to their refusal to permit the appellees to remain in their service, or to comply with their agreement to fill the order for the 500 hogsheads of tobacco, the appellants say they discovered the appellees, who were receiving and weighing the tobacco as delivered, were knowingly using false weights for the purpose of defrauding their partners or those of whom the purchases had been made, giving them less weights than they were entitled to, etc.

The action was brought at law and transferred to equity, with the affirmative allegations of the answer traversed by the appellees.

The chancellor, upon the hearing, found as to the tobacco in the barn at the time of the purchase, "that the representations made by the appellees as to the quality were false and fraudulent, and not being in a condition to be examined by the appellants, they relied on the representations of the appellees, and the appellees should ac-

count for the difference in the value as represented and as it was in fact." He fixed the value at $3.25 per hundred, and in that conclusion we concur, it being amply sustained by the testimony. The appellants had paid $5,000 on the tobacco, and at $3.25 per hundred, there was an excess in payment of $1,212.88.

He also adjudged the appellees used false weights, or loaded peas, in weighing and receiving the tobacco, and when discovered the appellants discharged them and ceased to buy tobacco to be handled in the factory. The court further adjudged that the commissions to be paid by Bird & Co. to the appellants, under the order, were $2.50 per hundred pounds, and as appellants had stemmed or prepared 308,610 pounds, on which they made $3,600.25, the appellees were entitled to one-half.

The court below concluded that the appellees and the appellants had embarked in a joint enterprise, and the interest the appellees had in it was still retained, or not forfeited, by reason of their discharge on account of their fraud and dishonesty in using false weights; that their discharge, however, ended all obligation on the part of the one to the other as to the performance of the contract, and while the appellees were entitled to their half commission, less the cost of putting up the tobacco, they were not liable in damages to the appellants for a failure to render the personal services agreed upon by the contract.

It is proper to determine first the interest the appellees had in this contract. They were certainly not partners in the tobacco, as the court properly adjudged, nor were they partners in the commissions, but were entitled to a half interest in the commissions as a compensation for

their services and the use of their tobacco factory. Their right to the one-half commission depended on the performance of the services they had agreed to render, and failing to render this service, they are entitled to a reasonable rental for the use of their factory so long as appellants used it, and to the value of their services actually rendered, less the damages, if any, the appellants sustained by reason of their abandoning the contract. The pleadings make this issue, and the fact the appellees were ready and willing to perform the service when properly discharged by the appellants, affords no reason for denying to the appellants the right to recover for the failure of the appellees to perform the services.

The chancellor, in his judgment below, gives to the appellees either a joint or partnership interest that can in no manner be lessened except by deducting the actual cost of putting up the tobacco, and if this is the proper version of the contract, he is undoubtedly right; but we think it manifest that the one-half commission was intended as compensation only for the use of the warehouse and for the personal services to be rendered, and if no services had been rendered, the only recovery would be for the use of the factory, less the damages sustained by reason of the failure to perform the services.

The appellees had no interest in the tobacco. Their credit was in no wise involved. They had sold their tobacco to the appellants—not only the tobacco in the warehouse, but that they had purchased and had not been delivered. The appellants had the entire charge and management of the purchase and handling the tobacco, and the appellees were only employes, at one-half of the commission, to be paid when they did what they agreed to do.

It was not intended by any of the parties to form a partnership. The appellees were not principals in the undertaking, but were to receive half commission in reward for services.

"It is well established," says the court, in Loomis v. Marshall, 12 Conn., 69, and other cases, "that a party who stipulates to receive a sum of money in proportion to a given quantum of profits as a consideration for his labor, is not chargeable as a partner." (Denny v. Cabot, 6 Met., Mass., 82.) In Bradley v. White, 10 Met., Mass., 303, where one agreed to pay all expenses and furnish the goods, and the other agreed to carry on the business for one-half the profits as compensation, it was held that no partnership existed; and while the facts of that case might well evidence a partnership as to third parties, yet, as between the parties to the agreement, no partnership was intended; and the case before us manifests such a plain purpose as between the parties to give to the appellees as compensation only the one-half commission for services, that it is needless to pursue the inquiry further. It is insisted, however, that as the appellees were always ready to perform the services, that no damages can accrue to the appellants, as they voluntarily caused the appellees to abandon their agreement or refused to permit them to perform it.

We perceive no difference between a case where a party of his own volition refuses to comply with his contract, and a case where, by his fraudulent conduct in its performance, he compels his employer to discharge him. In Wood on Master and Servant, page 221, it is said: "The very nature of the relation imports trust and confidence, and its evident purpose is the advancement of the master's

interests and profits by the servant's labor; therefore, if the servant violates this trust and confidence, or willfully does anything detrimental to the master's interests, or which involves him in loss, it is a breach of the contract which justifies his instant discharge," etc.

These appellees have violated their contract by such fraudulent conduct as compelled the appellants to discharge them. Their conduct was a more palpable breach than if they had abandoned their labor without any cause whatever. There was no voluntary discharge by the appellants, but they were compelled to require the appellees to leave their employ by reason of appellees' dishonest practices, that must have affected their business; and it is evident the right to recover damages exists, but to what extent is a question not involved here.

Whether this action, in so far as it attempts to recover for services, can be maintained at all upon the facts of this case, is one of grave doubt, but as the appellees are entitled to rent for the use of their building, it may not be improper to hear the case upon the question as to the value of the services, less the damages sustained by the breach of the contract on the part of the appellees. The value of the services only up to the date of the discharge, and the use of the warehouse as long as the appellants occupied it, are the questions to be determined, subject to the claim for damages by the appellants on account of the breach. These questions are remanded to the chancellor.

The judgment below is reversed for proceedings consistent with this opinion. Affirmed on cross-appeal.