CASE 42—PETITION ORDINARY—MARCH 15.

# Stone v. Turfmen's Supply Co.

APPEAL FROM KENTON CIRCUIT COURT.

1. PARTNERSHIP—CONSTRUCTION OF WRITING.—By the terms of a writing under which the owner of certain race horses agreed with another party to deliver them to him, and reciting that they were the property of the first party, second party to take charge of, and keep them without any expense to the owner, and train them and enter them for races, all winnings to be equally divided between them, except the trainer was to first receive out of the winnings the entrance fees paid by him, and with the provision that if sold the sale price was to be equally divided between them, there was no partnership.

H. P. MONTGOMERY FOR APPELLANT.

1. The contract between Stone and Allen lacked all the essential elements of a partnership; there was no community of profits, no community in the capital employed, nor in the management of the business, nor in the losses, if any. 3 Kent's Commentaries, 23; Lindley on Partnership, page 11; Beckwith v. Talbot, 2 Col., 639; Vandeveer v. Hull, 20 Wend., 70; Patterson v. Blenchard, 5 N. Y., 186; Lindley on Partnership, vol. 1, page 60; French v. Styring, 2 C. B. No. S.; Lyng v. Knowly, 3 B. & S., 556.

TISDALE & GRAY ON SAME SIDE.

1. The contract between Stone and Allen did not make them partners for any purpose. Conn v. Crabb, 10 Ky. Law Rep., 155; Fuqua & Smith v. Massie, 15 Ky. Law Rep., 849; Berry v. Callahan, 15 Ky. Law Rep., 539.

OWENS & FINNELL OF COUNSEL ON SAME SIDE.

(Brief withdrawn.)

D. A. GLENN FOR APPELLEES.

1. Appellant having taken a portion of the winnings of these horses,

and being interested in the profits which might arise from their training and handling by Allen thereby became a partner in the business of their training and handling and consequently liable for appellee's debt. Story on Partnership, 3 ed., secs. 53 to 58, 58 to 60, 61 and 138.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Appellee brought suit against appellant Stone and one Allen, as partners doing business under the name of the "Jacobin Stables," on an account for horse-feed and groceries, averring that they were partners in two race horses, that appellee had recently learned that appellant Stone was a partner in the ownership of the horses, and that the supplies were used in caring for and keeping them. By amendment, appellee averred more explicitly that Stone and Allen were partners, doing business under the name of the "Jacobin Stables," in owning, selling, feeding, training, handling and racing thoroughbred horses, under an agreement by which they shared the profits and losses of the business; that the feed and groceries were used by Allen in the management of the business, in feeding and providing for the horses and the men employed in the conduct of the business, and that some $54 was advanced for freight due by Stone and Allen to the Louisville & Nashville Railroad Company for transporting certain horses.

The answer of Stone denied the partnership alleged, denied that there was any agreement whereby Stone and Allen were to share in the profits and losses, or did share them, or that the feed and groceries were used as alleged, or that the amount advanced for freight was for freight

on any horses in which he was interested as a partner or otherwise.

Upon the trial, the court refused a peremptory instruction asked by appellant, and instructed the jury that if they believed from the evidence that the account, or any part of it, was contracted by Allen for supplies for employes or horses engaged under Allen in the pursuit of racing, under an agreement between Allen and Stone that the profits and losses of such pursuit were to be equally shared between them, they should find for plaintiff (appellee).

The only ground relied on for reversal is the refusal of the court to give a peremptory instruction for appellant, no exception being taken to the instruction which was given, and which, in our opinion, was clearly erroneous.

It appeared from the testimony taken by appellee that the money advanced was for freight on horses in which appellant had no interest, and the jury in their verdict appear to have omitted this item. It further appeared that, some two years before the account sued on, an agreement was entered into between Stone and Allen, by which it was provided:

"That the first named party has this day delivered to the second party the bay colt Rienzi, one year old, by Col. Clark, dam Delturno by Volturno, for the purpose and on the following terms: The colt is the property of the first party and the said Allen is to take charge of said colt and keep him without any expense to the first party of any kind whatever, train him to the best advantage possible and enter him for races and race him in the two and

three-year-old form, and for such races the colt is to be
entered in the name of the second party or in the name
of the Jacobin Stable and all winnings made by said colt
are to be equally divided between the parties to this con-
tract, except that the second party is to first receive out
of winnings of any race won by said colt the entrance fee
for said race, and balance divided. When the cost is sold
the sale price is to be equally divided between the parties
hereto, the said first party to be at no expense on any
account whatever.  This paper further witnesseth that
the said Stone also delivered to the second party his
chestnut filly, Mary Crigler, of the same age, by Col.
Clark, dam Glorietta, for the same purposes and on the
same terms as the colt Rienzi, and to be treated in the
same manner.  It is also understood and agreed that if
the first party can make satisfactory arrangements with
Murphy to ride one or both of the said animals, each of
the parties hereto is to pay one-half of the amount, and it is
further agreed and understood that all gross winnings,
except entrance fees as above stated and herein referred
to, are to be divided as herein agreed by the secretary of
the meetings at which the winnings are made."

Two subsequent agreements were made, signed by Al-
len, certifying that he had taken other horses from Stone
to keep and train on the same terms as he then had Rienzi
and Mary Crigler.  There was absolutely no testimony
taken in any way to show that, under the agreement be-
tween Stone and Allen, the former was, in any event, to be
responsible for any losses or expenses, except for
the employment of Murphy, in case his services

[ 21 ]

should be secured, and for the entrance fees in such races as the horses should win. The instruction given was, therefore, erroneous, because it presented to the jury for their consideration a state of fact which there was no evidence to support, viz.: that there was an agreement to share profits and losses. This instruction, however, as before stated, was not excepted to, and the question for decision is, whether the peremptory instruction asked for by appellant should have been given.

There is no pretense that Stone held himself out as a partner in the undertaking, and it is evident that he did not intend to become responsible, as partner, for the expenses incurred in the management and training of his horses, the only question being whether, by implication of law arising out of the contract into which he entered, he actually became a partner, and as such responsible for the debts of the partnership.

Allen did not become a co-owner of the horses under the contract, which expressly recited the fact that they were the property of Stone, and which contains nothing which, either expressly or by any reasonable implication, provides for any interest in them vesting in Allen. Undoubtedly, Stone did not intend to become responsible for the expense of training and running his horses; the contract expressly provides against such responsibility. If, therefore, a partnership existed, it existed not because Stone intended to become a partner, and as such responsible for the debts of the partnership, but because he intended to do something which, as matter of law, made him a partner. It is insisted that the agreement to divide

the gross earnings was an agreement which, by implication of law, had this effect.

The earlier English authorities lay down the proposition, broadly stated, that the sharing of profits constitutes a partnership; but the better modern authority shows many exceptions to this rule. It is exceedingly difficult to lay down an absolute rule for the determination of the existence of a partnership. It has been suggested —and in a number of modern English and American cases the theory has been acted upon—that agency is the test by which the partnership existence may be ascertained. This doctrine has been criticised upon the ground "that agency is, in such cases, deduced from partnership, rather than partnership from agency" (Holme v. Hammond, 5 Ch. Div., 458), but has been widely applied and seems now to be the prevailing doctrine. This test of agency clearly can have no application as indicating partnership in a case like the one at bar, where the power of one party to bind the other has been expressly contracted against; and the agency, if any exists, arises in spite of that prohibition from an actual partnership, if there was one.

"The intention of the parties will be determined from the effect of the whole contract, regardless of special expressions. And if the actual relation which the parties have assumed toward each other, and the rights and obligations which have been created by them, are those of partners, the actual intention of the parties or their declared purpose can not suspend the consequences. And so if the parties have used the word partnership in their contract and called themselves partners, this will not

make them such if the contract is not consistent with such relation." (1st Bates on Partnership, section 17.)

There was no mutual agency in this case; no agreement to share profits and losses, nor any community of interest in the property concerned, nor in the profits to be derived from its use. Under the contract in this case, which was continued almost until the close of the period covered by the account, and was succeeded by a new contract still more antagonistic, if possible, to the idea of a partnership, the object to be accomplished was one of two things, viz,, either Allen obtained the use of Stone's race horses, for which Stone was to receive one-half of the gross profits, or what appears to us the more reasonable construction, Stone employed Allen to keep, train and race his horses, the latter's compensation for his services and his expenses in the management of the horses to be one-half of the gross profits, and in the event of any one of the horses winning a race, the expense of the entrance fee in that particular race was to be refunded to him before the profits were divided. Nor does the fact that he was to receive one-half of the proceeds of sale, in case a sale of the horses was made, militate against this conclusion. He made a chancing bargain for his compensation, which might be very large, and, on the other hand, might be entirely inadequate to compensate him for his actual expenditures. In the event one of the horses was sold, he received as a part of his compensation for keeping and racing him one-half of the price. That gave him no interest in the horse, nor in the profits derived from racing him. His claim to a share in these profits was the mode

fixed to ascertain the compensation for his services, and the proviso for a division by the officer of the race track was evidently intended for the security of the horse owner, in case of his absence at the time the winning was made.

A long list of cases in support of this view is given in section 23 of 1st Bates on Partnership, notable among which in their application to the case under consideration are the cases of Beecher v. Bush, 45 Mich., 188 (40 Am. Rep., 465), and Hart v. Kelly, 83 Pa. St., 286.

In Beecher v. Bush, Judge Cooley, delivering the opinion, it was held that, where A hires a hotel from B, and ran it, paying the owner from day to day a sum equal to one-third of the gross receipts, it was not a partnership *inter se*, and Judge Cooley said: "We also think there can be no such thing as a partnership as to third persons, when as between the parties themselves there is no partnership, and the third persons have not been misled by concealment of facts or by deceptive appearances."

In Hart v. Kelley, A agreed to loan B sufficient money to enable him to carry on a saloon in a specified house, A to receive three-fourths of the net profits as compensation for the use of the money. In an action against him for work and labor on the property, A was held not a partner, and the doctrine of Cox v. Hickman, 8 H. of L. Cases 268, was approved. (See also Fuqua & Smith v. Massie & Sons, 95 Ky., 387.)

We conclude that the written contracts, which were the sole testimony with regard to the agreement between Stone and Allen, show that no partnership in fact existed

between them, and there is not the slightest evidence of fraud or deception as to third parties which would render Stone liable for the amount of the supplies sued for. The peremptory instruction asked for should have been given.

The judgment is, therefore, reversed, and cause remanded, for further proceedings consistent with this opinion.