## Studebaker Corporation of America v. Dodds & Runge.

(Decided December 11, 1914.)

### Appeal from McCracken Circuit Court.

1. Corporations—Misnomer—Objection to Cannot Be Made By Demurrer—Must Be Raised By Plea In Abatement.—A corporation, when sued upon a contract giving it a wrong name, must by answer or plea in abatement set forth the misnomer, so that plaintiff may amend if desired; but where such plea was not made in the trial court and there was a defense on the merits, the corporation cannot complain on appeal that judgment went against it in the name by which it was sued, which was its true name.

2. Agency—Contract Made By Agent—When Authority of Agent a Question for the Jury.—Where, in an action to recover damages for the breach of a written contract, the defendant denied the agency of the person who assumed to act for it in making with the plaintiffs the contract, and there was evidence to the effect that the defendant, in reply to a letter from plaintiffs soliciting it to make the contract with them, wrote them that "our Mr. A. C. Hill," the person who made for it the contract, would call within the next week or ten days to see them about the matter, and H. did, within the time indicated, call upon plaintiffs and make with them the desired contract, such evidence, together with the admitted fact that H. was at the time in its employ, authorized the jury to find that H. had authority as agent to make for defendant the contract.

3. Partnership—Who is Not a Partner.—One who, without any interest in the business property, is, by agreement, to receive as compensation for his services, and only as compensation therefor, a certain proportion of the profits of the business, and is neither held out to the world as a partner nor through the negligence of the owner of the business permitted to hold himself out as a

partner, is not a partner either as to the owner or third persons, but a mere agent of the former, who will not be bound by any act of such agent which is not in the apparent scope of the agency.

WHEELER & HUGHES for appellant.

HENDRICKS & NICHOLS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the McCracken Circuit Court, entered upon a verdict which awarded appellees $750.00 damages for the breach of a contract alleged to have been made by them with appellant. It was averred in the petition that by the contract in question appellees were given by appellant the exclusive agency for the sale of its automobiles in the counties of McCracken, Marshall and Calloway for the remainder of the year 1912 and the whole of the year 1913; that six of the automobiles to be sold by appellees were to be shipped them by appellant September 1, 1912, for which they were to pay upon receipt of the bills of lading, and others were to be shipped them later as needed. That the prices appellees were to pay for the automobiles shipped them by appellant, and also the prices at which they were to sell them, were fixed by catalogues furnished them by appellant when the contract was made; and that the difference in amount between these catalogue prices was to be retained by appellees to compensate them for the sales made. It was further alleged that appellant violated this contract by illegally revoking appellees' agency and refusing to ship them the six automobiles which it provided should be furnished them September 1, 1912. The defense interposed by appellant's answer was that it did not make the contract, and that one A. C. Hill, by whom it was made with appellees, was not its agent and had no authority from it to make such a contract.

Appellant asks a reversal of the judgment on the grounds: (1) That the trial court erred in overruling its demurrer to the petition; (2) In overruling its motion for a peremptory instruction; (3) In the matter of instructing the jury.

The ground of demurrer was that the name, Studebaker Corporation, appearing to the written contract, is not that of the appellant, whose real corporate name is "Studebaker Corporation of America." As to this

ground little need be said. The objection made could not properly be interposed by demurrer, but should have been presented by answer or affidavit in the nature of a plea in abatement, setting forth the misnomer and disclosing the true name of the appellant. If this had been done appellees could have amended their petition by alleging the mistake and that appellant was the contracting corporation. Moreover, it is apparent from the record that appellant was the corporation for which Hill claimed to be acting when he made with appellees the contract alleged to have been violated; and, as appellant made defense in the court below on the merits, it is estopped to complain that judgment went against it in its true corporate name. University of Louisville v. Hammock, 127 Ky., 564; L. & N. R. Co. v. Hill, 12 Bush, 131; Teets v. Snider Heading Mfg. Co., 120 Ky., 653; Pike, Morgan & Co. v. Wathen, 25 R., 1264.

The writing evidencing the contract here involved is as follows:

"This is to certify that Dodds & Runge of Paducah, Kentucky, are to have exclusive sale of E. M. F. & Flanders Automobiles and parts, on and after Sept. 1st., 1912, in said counties as, viz.: McCracken, Marshall and Calloway. Also they are to receive shipment of six automobiles Sept. 1, 1912, for which they agree to receive and pay cash upon presentations of bill of lading. It is also agreed that the above mentioned parties are to have our 1913 regular agents' contract.

"Studebaker Corporation, Louisville Branch,
"By A. C. Hill, Salesman."

Appellant's complaint of the refusal by the court of the peremptory instruction asked by it, seems to be based upon three grounds: first, that there was a failure of proof as to the authority of A. C. Hill to make for appellant the contract with appellees; second, that there was no proof of the damages alleged to have been sustained by appellees; third, that if there was such a contract, the order from appellees for the shipment to them of the six automobiles by appellant was cancelled by appellees through their representative, Quarles, sent to the office of appellant at Louisville.

As to the first of these contentions, we think it sufficient to say that there was abundant evidence conducing to prove the agency of Hill. It is insisted that the word "salesman" attached to his name shows that he was a mere soliciting agent employed by appellant to effect

sales of its automobiles and that he was without authority to make such a contract as that sued on. Other agents of appellant testified that Hill's agency was confined to the making of sales of automobiles, and that the addition of the word salesman to his name on the contract was intended to indicate that fact. On the other hand, evidence of Hill's authority to make the contract for appellant was furnished by the following letter written by appellant to appellees, August 15, 1912:

"Louisville, Ky., Aug. 15, 1912.
"Messrs. Dodds & Runge,
          Paducah, Ky.
"Gentlemen:—We have your favor of the 14th, and our Mr. A. C. Hill will be in Paducah and will call on you within the next week or ten days.
          Yours very truly
-          "Studebaker Corporation of America,
                              Louisville, Branch,
                    "By WILLIAM WYMER."

This letter was in reply to one of the fourteenth of August, written by appellees to appellant, in which they asked to enter into a contract with it to become agents for the exclusive sale of its automobiles in the counties of McCracken, Marshall and Calloway. Within a few days after appellant's letter of August fifteenth was written to appellees, Hill did call to see them, as the letter said he would, and then made with them for appellant the contract in question. The letter refers to Hill as "our Mr. A. C. Hill." The only business he could have had with appellees was in reference to the contract he made with them; and it is admitted that Hill was then in appellant's employ. The letter referred to, together with the acts of Hill in calling to see appellees and making the contract with them, at least, furnished sufficient evidence of the agency and his authority to make the contract, to require the submission of the question to the jury.

No reason is apparent for sustaining appellant's contention that there was no evidence conducing to show that appellees sustained any damages by appellant's violation of the contract. It is true there was no evidence as to any loss sustained by appellees on account of being deprived of the exclusive sale of appellant's automobiles in the three counties named in the contract, for that element of the damages claimed in the petition was elimi-

nated on the trial by the court, as too remote and specu-
lative for recovery; which ruling cannot be reviewed by
us, as appellees have not taken a cross-appeal. But there
was evidence as to the damages sustained by appellees
from the failure of appellant to ship them the six auto-
mobiles ordered by them. As to this matter, the evidence
shows that appellees were to get the cars at appellant's
catalogue prices, less 20% and 10%; and that they were
to sell them at certain prices fixed by a catalogue fur-
nished them by appellant. It was then shown by proof,
furnished in part by the catalogues, which were intro-
duced in evidence, what appellees were to pay for the
automobiles delivered at Paducah; and that the catalogue prices at which they were required by the contract
to sell, and could have sold them there, were the market
prices at which such machines were then selling at that
place. These facts being thus established, the measure
of damages, if any were awarded by the jury, was the
difference between the contract price agreed to be paid
by appellees to the appellant for the automobiles, and
the reasonable market value of same at the time they
were to be delivered to appellees in the city of Paducah.

Appellant's contention that appellees' order for the
six automobiles was cancelled by Quarles as its repre-
sentative, is not maintainable. Quarles was introduced
as a witness by appellees and he admitted that he called
at appellant's office or place of business in Louisville
shortly after the contract between it and appellees was
made, and that, while there, he inspected automobiles of
the class ordered by appellees; that he was then told by
Wymer, an employe at the time in charge of its office,
that appellant had closed a contract with a party or part-
ies in Paducah, whose names were not given, for the sell-
ing of its automobiles; but that he did not advise Wymer
that he had any business connection with appellees or
interest in the contract which had been made by the lat-
ter with appellant. Quarles further testified that his
inspection of the automobiles at appellant's place of
business in Louisville was made in obedience to a tele-
gram received by him from appellees at Cleveland, Ohio,
and that he had been employed by appellees to sell for
them the automobiles they were to receive under their
contract made with appellant, for which he was to be
paid by them one-half the profits realized from such
sales. He did not testify, however, and was not asked,
whether he gave Wymer any advice or direction cancel-

ing appellees' order for the shipment to them of the six automobiles to be delivered at Paducah. Wymer, who was the last witness introduced on the trial, testified as to the visit of Quarles at appellant's Louisville office, and said that he then tried to get from Quarles his name, but was unable to do so; that Quarles wanted to know what cars appellant had shipped Dodds & Runge, and said to him: "Don't ship a thing until I get back and you hear from us."

For some reason unexplained in the record Quarles was not reintroduced to contradict this testimony of Wymer. Whether he would have done so cannot, therefore, be told, but the record furnishes no evidence whatever that he had been authorized by appellees to cancel their order for the shipment to them of the six automobiles. At the time the contract between appellant and appellees was made the latter gave to Hill, as the agent of appellant, an order to it to ship the six automobiles as stipulated in the contract, and at the same time also gave Hill a check of $150.00, required by appellant as a deposit before shipping to them the automobiles. On August 24, 1912, and after the visit of Quarles to appellant's Louisville office, its manager wrote appellees the following letter, which was duly received by them:

"The Studebaker Corporation of America,
            "Louisville, Ky., August 24, 1912.

"Messrs. Dodds & Runge,
            Paducah, Ky.

"Gentlemen:—We are in receipt of your order given to our Mr. Hill and your check on deposit, which we are returning. We are sorry we cannot accept same as our dealer in Paducah has decided to put in a place and take in a partner and will devote considerable more time and attention to our stuff, and in as much as he has represented us there for years, it will not be right to cancel his contract at this time.

"Thanking you for your interest in our behalf, and sorry we cannot accept such a valuable order at this time, beg to remain,
            Yours very truly,
      "The Studebaker Corporation of America,
                        Louisville Branch.
            "By W. W. Beason, Mgr."

It will be observed that this letter does not rest ap-

pellant's refusal to ship the six automobiles upon the
ground that the order which appellees had given there-
for had been cancelled by Quarles. On the contrary, it
based the refusal of the order solely upon the ground
that a former Paducah dealer in automobiles, who had
been handling its machines, had taken in a partner and
wished to continue in the business of selling them for
it, and that as he had represented appellant there for
years it would not be right to cancel his contract at that
time. The contents of this letter throws much doubt upon
the statement of Wymer as to the cancelling of the order
for the automobiles by Quarles.

It is insisted for appellant that, although the evidence
fails to show that Quarles had authority from appellees
to cancel their order, the fact that he was to share with
them the profits to be realized from the sales of appel-
lant's machines under their contract with it, made him
a partner in the business; and if this be true, as a mem-
ber of the partnership, he had a right to cancel the order
for the shipment to appellees of the automobiles, with-
out express authority from them to do so. This conten-
tion is also unsound. A contract for the remuneration
of an agent of a person engaged in business, by a share
of the profits of the business, does not of itself make the
agent a partner in the business. Such a relation may,
however, constitute a partnership if the entire transac-
tion discloses an arrangement by which the parties are
co-principals and the business is carried on for their
mutual profit. But in order that persons between whom
there is no actual partnership may be held liable as part-
ners to third persons, a case of estoppel must be made
out against them. As said in 30 Cyc, 385:

"According to the rule now generally prevailing both
in England and in America, where there is no partner-
ship in fact, merely sharing the profits of a venture does
not create one as to third persons, who have not been
legitimately led to believe that one exists. * * *"

Again, in the same volume, page 388, is this further
statement of the law:

"According to the weight of authority one who, with-
out any interest in the business property, is, by agree-
ment, to receive as compensation for his services, and
only as compensation therefor, a certain proportion of
the profits of the business or a stipulated sum, together
with a certain proportion of the profits, and is neither
held out to the world as a partner nor through the negli-

gence of the owner of the business permitted to hold himself out as a partner, is not a partner either as to the owner or third persons.''

This view of the law is sustained by numerous decisions of this court. Fuqua v. Massie, 95 Ky., 387; Donley v. Hall, 5 Bush, 549; Heran v. Hall, 1 B. Mon., 159; Stone v. Turfman's Supply Co., 103 Ky., 318. According to the admitted facts, Quarles was to own no interest whatever in the automobiles that were to be shipped appellees by appellant. He was not a party to the contract between them, was not to furnish any part of the money to pay for the automobiles, was to assume no responsibility for any debts that might be contracted by appellees in the course of the business, and there would have been nothing in the service he was to perform for them that would have held him out to the public as a partner of theirs in the business of selling appellant's automobiles. He was, or would have been, a mere agent or salesman for appellees, employed to sell the automobiles, or some of them, in the territory covered by their contract with appellant, and was to be compensated for his services by being paid half the profits realized on such automobiles as might be sold by him. In view of these facts Quarles was not a partner of appellees; consequently he had no power, in the absence of express authority from appellees—of which there was no proof —to cancel their order for the six automobiles appellant contracted to furnish them. It is our conclusion that the giving of the peremptory instruction, on any of the grounds urged by appellant, would have been unauthorized; therefore, its refusal by the trial court was not error.

Appellant's complaint of error in the instructions is without merit. Instructions 1 and 2 are objected to. No. 1 was as follows:

''The court instructs the jury that if they believe from the evidence that at the time the contract sued on was executed, A. C. Hill was the authorized agent of the defendant and had power and authority to sign and execute the same, or if they believe from the evidence that the defendant by its acts and conduct held said A. C. Hill out as its authorized agent in such a way as to induce a reasonably prudent person that he was its authorized agent with power and authority to execute such contracts as the one herein sued on, then they will find for the plaintiff such sum in damages as they may

believe from the evidence will fairly and reasonably compensate them for the loss, if any, sustained by them on account of the failure of the defendant to comply with said contract in delivering the cars or automobiles mentioned in this case; not exceeding in all the sum of $1,547.11, the amount claimed in the petition; but unless you so believe from the evidence that the said A. C. Hill was the authorized agent of the defendant, as defined to you herein, to make and execute said contract, you will find for the defendant.''

It is objected that this instruction did not properly state the law, as it omitted to advise the jury that, in order to find for appellees, they must believe from the evidence that in making the contract—for the alleged breach of which damages were claimed—they must have relied upon the representations of appellant and its holding out of A. C. Hill as its agent. This objection is hypercritical. The omission in question was substantially cured by that part of the instruction which told the jury that the representations of appellant and its holding out of Hill as its agent, must have been such as to induce a reasonably prudent person to believe he was its agent, and as there was nothing in the evidence conducing to show that appellees were not of this class of persons, the conclusion was inevitable that they were thereby induced to enter into the contract. As the jury could not have been misled by the instruction in the form given, the omission complained of was not prejudicial to appellant.

As instruction No. 2 is as to the measure of damages, and the measure given therein is as stated in a preceding part of the opinion and is correctly worded, comment thereon is deemed unnecessary.

As the record furnishes no legal cause for disturbing the verdict of the jury, the judgment is affirmed.