## Crider v. Providence Coal Mining Company.

(Decided February 23, 1932.)

C. S. NUNN and JOHN A. MOORE for appellant.

DAVID POSTLETHWEIGHT and JOHNSON POSTLETHWEIGHT for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

A. F. Crider has prosecuted an appeal from a personal judgment against him in favor of the Providence Coal Mining Company, for an admitted debt of the Paris Coal Company. The question presented is whether A. F. Crider was a partner in the firm known as the Paris Coal Company.

Prior to July 7, 1926, W. S. Paris was engaged in the retail coal business in the city of Marion, Ky., under the assumed name of Paris Coal Company. On that date, W. S. Paris and wife conveyed to A. F. Crider, of Shreveport, La., for a consideration of $1,500 cash, an undivided one-half interest in certain real estate in the city of Marion, then and thereafter occupied and used as a coal-yard by the Paris Coal Company. The deed of conveyance contained this provision:

"It is further agreed and understood that the first party (W. S. Paris) has sold and by this deed also conveys to second party (A. F. Crider) an undivided one-half interest in and to the Paris Coal Company, including scales, one wagon and harness, and two mares, as well as all shovels and other tools and equipment used in connection with said coal business."

Some background is relied upon by both parties as affecting the interpretation of the deed. A. F. Crider permitted his brother J. H. Crider to engage in business

with W. S. Paris under the firm name of Paris Coal Company, and allowed the firm to use his one-half interest in the property conveyed by the deed. J. H. Crider agreed to pay the taxes and insurance premiums on the property. There was no agreement or communication whatever between A. F. Crider and W. S. Paris, except the transaction evidenced by the deed, which was negotiated by another. It was proven without contradiction that A. F. Crider acquired the property for the purpose of lending it to his brother, whom he desired to assist in a business way. Another brother of A. F. Crider conducted the negotiations for the purchase of the property, but the agency was completed when the property was acquired. The judgment of the circuit court was rested upon the conclusion that the provision quoted from the deed to A. F. Crider operated as a matter of law to create a partnership between A. F. Crider and W. S. Paris in the Paris Coal Company, and rendered A. F. Crider personably liable for the debts of that concern. The soundness of that conclusion is the sole problem now to be resolved. Some conflict has arisen among the authorities as to the true test of the partnership relation. In general, it has been understood to mean a contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the losses in certain fixed proportions. Goldsmith v. Eichold, 94 Ala. 116, 10 So. 80, 33 Am. St. Rep. 97. "All definitions are approximate rather than exhaustive."

Sir Frederick Pollock, in his work on Partnership, considered that quoted above the most businesslike and substantially accurate definition, and one which, with slight amendment, might be accepted, notwithstanding the criticism by Sir George Jessel (5 Chan. D. 472), on the ground that there may be partners who do not contribute any property, labor, or skill, as where a share is given to the widow of a prior partner. Bouv. Law Dict. (3rd Rev.), page 2471, Partnership. Undoubtedly, a business may be so conducted by two or more persons as to evidence a contract, status, or relation that will constitute a partnership, or at least estop the parties from denying that it was so. Roy C. Whayne Supply Co. v. McGowan, 213 Ky. 102, 280 S. W. 491. The Supreme Court of the United States in Meehan v. Valentine, 145 U. S. 611, 12 S. Ct. 972, 973, 36 L. Ed. 835, gave extensive

consideration to the question. Mr. Justice Gray, in delivering the opinion of the court, said:

"The rule formerly laid down, and long acted on as established, was that a man who received a certain share of the profits as profits, with a lien on the whole profits as security for his share, was liable as a partner for the debts of the partnership, even if it had been stipulated between him and his copartners that he should not be so liable; but that merely receiving compensation for labor or services, estimated by a certain proportion of the profits, did not render one liable as a partner. Story, Partn., c. 4; 3 Kent, Comm. 25, note 32-34; Ex parte Hamper [17 Ves. 403], above cited; Pott v. Eyton, 3 C. B. 32, 40; Bostwick v. Champion, 11 Wend. [N. Y.] 571, and [Id.] 18 Wend. [N. R.] 175, 184, 185, [31 Am. Dec. 376]; Burckle v. Eckart, 1 Denio [N. Y.] 337, and [Id.] 3 N. Y. 132; Denny v. Cabot, 6 Metc. (Mass.) 82; Fitch v. Harrington, 13 Gray [Mass.] 468, 474 [74 Am. Dec. 641]; Brundred v. Muzzy, 1 Dutcher (25 N. J. Law) 268, 279, 674. The test was often stated to be whether the person sought to be charged as a partner took part of the profits as a principal or only as an agent. Benjamin v. Porteus, 2 H. Bl. 590, 592; Coll. Partn. (1st Ed.) 14; Smith, Merc. Law (1st Ed.) 4; Story, Partn., sec. 55; Loomis v. Marshall, 12 Conn. 69, 78 [30 Am. Dec. 596]; Burckle v. Eckart, 1 Denio [N. Y.] 337, 341; Hallet v. Desban, 14 La. Ann. 529."

It was determined in that case that a contract by which a sum of money was lent to a partnership, under an agreement that a small amount of interest should be paid at all events, with a contingent compensation for the loan equal to one-tenth of the annual profits of the business, if those profits exceeded the sum lent, did not render the lender liable for the debts of the partnership. In the later case of Karrick v. Hannaman, 168 U. S. 334, 18 S. Ct. 135, 42 L. Ed. 484, in which the opinion was written by the same justice, a contract of partnership was defined as one by which two or more persons agree to carry on a business for their own benefit, each contributing property or services, and all having a community of interest in the profits. It is, in effect, a contract of mutual agency; each partner acting as a principal

in his own behalf and as agent for his copartner. The relation in its origin and essence is contractual. This court has been called upon frequently to dispose of the problem, and its decisions accord with the current of authority. In Frank v. Thompson, 207 Ky. 335, 269 S. W. 295, it was said that the partnership relation is founded upon a voluntary contract, wherein the minds of the parties meet upon the terms, and necessarily contemplates a sharing of profits, coupled with an express or implied agreement to bear losses. In Marshall v. Bennett, 214 Ky. 328, 283 S. W. 115, a partnership was referred to as a status arising out of a contract between two or more persons, who agree to share, as common owners, the profits of a business carried on by all of them, or by some of them on behalf of all of them. In Ford v. Jellico Grocery Co., 194 Ky. 552, 240 S. W. 65, it was held that the purchase of a majority interest in land created a tenancy in common with the other owners, and did not of itself result in a partnership, or afford conclusive evidence of that relationship.

In Boreing v. Wilson, 128 Ky. 570, 108 S. W. 914, 33 Ky. Law Rep. 14, it was held that, while profit sharing was not a conclusive test of partnership, it was important as evidence tending to prove the relation, since an agreement to share profits was an essential element of every partnership, and its absence conclusive proof that a partnership did not exist. See, also, Edwards v. Johnson, 219 Ky. 113, 292 S. W. 750, and Crawford v. Weidemann, 159 Ky. 18, 166 S. W. 595. In the light of the authorities, and construing the deed according to its plain and unambiguous terms, it amounts to nothing more than the conveyance to A. F. Crider of a one-half interest in certain real estate and personal property. The legal effect was to create a cotenancy in the real estate, Ford v. Jellico Grocery Co., supra, and a joint ownership of the personal property, 47 C. J., p. 577, sec. 70; Roberts v. C. W. Adams & Sons, 110 S. W. 314, 33 Ky. Law Rep. 207; Blackerby v. Oder, 201 Ky. 403, 257 S. W. 43; Ohio Valley Tie Co. v. Hayes, 180 Ky. 469, 203 S. W. 193; Arkenburg v. Bonnie, 30 S. W. 965, 17 Ky. Law Rep. 225; Stone v. Turfmen's Supply Co., 103 Ky. 318, 45 S. W. 78, 19 Ky. Law Rep. 2025. A. F. Crider had no voice in the management or control of the business of the Paris Coal Company, did not participate in its profits, and neither expressly nor impliedly entered into

any contractual relation with Paris. In such cases the authorities are agreed that one cotenant is not liable for the debts of the other cotenant, or of any partnership or business in which he might engage. The evidence is direct, positive, and uncontradicted that the partnership which carried on the business of the Paris Coal Company, after the deed was made, was composed of W. S. Paris and J. H. Crider. There was no holding out or other circumstance tending to show that A. F. Crider was a partner, or that could operate to estop him from denying that he was concerned in, or connected with, the firm. It follows that A. F. Crider was not liable for the debts of the firm, and the circuit court committed an error in rendering the personal judgment against him.

The judgment is reversed for proceedings consistent with this opinion.