## Stewart v. Stovall.

(Decided February 15, 1921.)

## Appeal from Carter Circuit Court.

1. Partnership—Creation and Requisites.—While the partnership relation is founded in voluntary contract, no particular form of contract is necessary to create a valid partnership. It can be oral or written and can result from the conduct of the parties, or from the verbal communications between them; and in determining whether a particular contract constitutes a partnership the court must ascertain the intention of the parties as disclosed by the entire transaction.

2. Frauds, Statute of—Real Property and Interests Therein.—A parol agreement entered into by two persons to jointly purchase, own and cultivate a farm, each to pay one-half the purchase price therefor, and the two share equally all expenses incurred in operating the farm and likewise the profits arising from its cultivation, possesses all the elements essential to the validity of a contract of partnership Nor is such a contract within the statute of frauds; and if one of the partners, acting under its terms in purchasing the farm as agent for the partnership, in doing so violates the partnership agreement by making the purchase in his own name and taking the deed to himself, a court of equity, at the suit of the other partner, will declare his thus taking the title to the property a fraud upon the complaining partner, adjudge it to be held in trust for the partnership and compel the recalcitrant partner to convey an undivided half of the land to the other partner upon the payment by the latter of his half of the purchase price thereof.

THEOBALD & THEOBALD for appellant.

H. R. DYSARD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, J. Watt Stovall, brought this action against the appellant, Ellis Stewart, in the court below to enforce the terms of a contract of partnership, alleged in the petition to have been entered into by them in the year 1918, and, particularly, to compel of the appellant the conveyance by proper deed to appellee of an undivided half of a 192½ acre tract of land in Carter county purchased by him, as also alleged, for the partnership, and which, as further alleged, he, without appellee's knowledge or consent and in violation of the terms of the partnership and the latter's rights as a copartner thereun-

der, fraudulently procured to be conveyed by deed from the vendor to himself.

The answer of the appellant specifically denied each of the several material averments of the petition, as amended, and the circuit court, upon considering the issues thus made and proof taken by the parties, granted appellee the entire relief prayed in the petition. Excepting to the judgment so determining the rights of the parties, appellant was granted an appeal therefrom, his prosecution of which brings it to us for review.

It appears from the record that appellant and appellee are cousins, the former being a farmer residing near the town of Grayson and the latter a physician residing in that town. It is alleged in the petition that they knew the land in question, owned by a widow, Mrs. Seaton, and known as the Seaton farm, was for sale at $30.00 per acre, and as each of them wished to buy it and neither to compete with the other in its purchase, they had a meeting in appellee's office and entered into the contract of partnership for the purpose of together purchasing the farm and owning and operating it as equal partners. The terms of the partnership are set forth in the petition as follows:

"Plaintiff says that by the terms of the said partnership agreement the land was to be purchased by and deeded to them (appellant and appellee) jointly, to be owned, occupied, used and enjoyed jointly by them, each partner paying equally one-half the purchase price; and the possession, use, enjoyment and increase were to be used and divided equally, half and half, and the expenses incurred in the use of the property or the losses by reason of depreciation in value, or other losses or expenses, to be borne equally."

The above allegations respecting the terms of the partnership are followed by others setting forth appellant's purchase of the land as agent for the partnership, his violation of the partnership agreement and attempted conversion of his copartner's interest in the land by fraudulently causing the deed thereto to be made to himself, instead of the partners; and finally appellee's ability and willingness to pay his half of the cash payment made by appellant on the land, and by notes, secured by a lien on his interest as a copartner in the land, assume his half of the deferred payments of purchase money according to the terms of the partnership agreement and

those of the deed to appellant from the vendor of the land; also appellee's tender to appellant of the money and notes referred to, the latter's refusal thereof; and, likewise, his refusal to comply with appellee's demand that he deed him, as a copartner, an undivided half of the land. It is shown by the deed from Mrs. Seaton to appellant and admitted by the parties that the consideration for the sale of the land was $5,767.50, of which amount the latter paid her $2,767.50 cash in hand, and for the remaining $3,000.00 he executed to her his six notes of $500.00 each, payable from one to six years respectively, all bearing six per cent. interest from date and secured by vendor's lien retained on the land by the deed. By the judgment rendered the circuit court substantially · held that appellant and appellee had entered into an agreement to purchase, own and operate the Seaton farm as equal partners; that it was purchased by appellant for the partnership and the deed fraudulently taken to himself; but that by his fraudulent act in so doing he took the title conveyed by the deed in trust for the copartnership and its members jointly and equally, which entitled appellee to a conveyance from appellant by deed of an undivided half of the land as constituting his share as an equal partner of the latter in its purchase and ownership; hence, appellant was ordered to make appellee such deed, and upon his failure to do so within sixty days that the deed be made by the master commissioner. On the other hand, it is required by the judgment that before the delivery to him of the deed appellee shall pay appellant $1,383.75, one-half the cash payment made by him on the land, and execute to him his six notes for one-half of the purchase money remaining unpaid, each for $250.00, one due January 15, 1920, and one January 15 of each succeeding year, all to bear six per cent. interest from date until paid and to be secured by the retention in the deed of a lien upon the land thereby conveyed.

The first and material question presented for our decision is, was there a partnership formed by the parties for the purpose of buying, owning and operating the Seaton farm? Regarding this issue, which is one of fact, we find that the testimony furnished by the deposition of the appellee is strongly to the effect that such a partnership was agreed upon and entered into by appellant and appellee and that by its terms they were, as partners, to contribute each one-half of the money to make whatever cash payment might be required by Mrs. Seaton upon the

land, and as partners execute to her their joint notes for the remainder of the consideration, payable in such amounts and at such times, respectively, as might be agreed on in the contract made with her for the purchase of the land; that appellant, acting for the partnership, was to contract with Mrs. Seaton for the land and cause it to be deeded to appellee and himself as equal partners; that appellant was to take charge of and cultivate the land, and appellee to employ and pay a hand to share eqully with appellant the labor incident to its cultivation; and that appellant and appellee were to bear equally all expenses incurred in their farming operations on the land, and share equally such profits as might be made. Appellee also testified that after the terms of the partnership were agreed on appellant left his office at once to see Mrs. Seaton and buy the land, and in about thirty minutes returned and informed appellee that he had purchased it at the price and upon the terms as to payment they had been advised Mrs. Seaton would accept, and that Ed. Rupert, her son-in-law, with whom, by her direction, the contract of sale was made, told him to return and see him the next day and close the trade, to all of which appellee gave his full approval. The latter further testified that appellant did not call at his office or see him the next day, but he did, without his knowledge, on that day obtain of Mrs. Seaton a writing evidencing a sale of the land to him, and a day or two later, following a survey of the land, obtain a deed conveying it to him alone; and that when these facts became known to appellee, which was after appellant obtained from Mrs. Seaton the deed, he saw appellant and made a tender to him of one-half the cash payment made by him on the land, offered to execute to him his several notes for one-half of the unpaid consideration, payable as of the respective dates of those given by him to Mrs. Seaton, and demanded that he execute and deliver to him a deed conveying him an undivided half of the land, but that appellant refused to accept either the money or notes thus tendered and offered, or to make him the deed.

Notwithstanding the positive denial of the partnership made by the appellant's answer, the testimony contained in his deposition substantially admits it and that its terms were as claimed by appellee. He, however, excuses his nonperformance of its terms on the grounds that the agreement was never reduced to writing, and that when he met Rupert, Mrs. Seaton's agent, at the

time appointed for putting in writing the contract by which he had purchased the land, appellee was not in his office. It does not appear from his deposition whether appellee was then attending a patient, or what effort beyond calling at his office was made by appellant to find him, or that he requested of Rupert a postponement of the closing of the land deal until appellee could be present. Nor does it appear from appellant's testimony that he saw or notified appellee to be present when the deed was later made after a survey of the land, or that he gave him an opportunity to examine it, pay his half of the required cash part of the consideration, or to unite with appellant in executing the notes embracing the deferred payments of the remaining consideration. It is to be noted, too, that though appellant testified it was understood by him the partnership agreement in question was to be put in writing, he failed to testify that this was suggested by him to appellee or understood by the latter, or that he (appellant) ever attempted to prepare or cause to be prepared a writing containing the terms of the partnership agreement. We find from the evidence contained in the depositions of witnesses other than appellant and appellee that the latter's testimony respecting the alleged partnership between appellant and himself and its terms is supported by that of the following named witnesses, viz.: Richard Carroll, Art Carroll, Charles Green, Robert Jackson and J. C. Crawford, to each of whom appellant admitted, in substance, that an agreement had been made between appellee and himself to purchase the Seaton farm as partners, and to some of whom he gave as a reason for taking the deed to himself the absence of appellee when the contract for the purchase of the land was closed, and to others that appellee was excluded from the deed because the agreement as to the partnership was not in writing.

Mrs. Seaton and Rupert, whose depositions were taken for appellant, testified that when the sale of the land was made to the latter they were unaware of the existence of a partnership between him and appellee for its purchase, or that appellee had any interest in the transaction. This testimony is of no probative value as bearing on the question whether there was such a partnership. For if, as seems to be admitted, it had been agreed by appellant and appellee that the former should conduct all negotiations for the purchase of the land, it was not necessary, nor expected, that the vendors should

be advised of appellee's interest as a partner therein until the time arrived for executing the deed; and if there were such partnership and appellee had such interest, as appellant admittedly did not then advise the vendors of appellee's interest as a partner in the purchase, his failure to do so, together with his repudiation of the partnership by taking to himself the deed to the land, would seem to give strong force to appellee's contention that appellant entered into the partnership as a means of removing him as a competitor in the purchase of the land; and if such was the appellant's motive and purpose it established the fraud upon his part complained of by appellee in the petition.

The only other evidence supporting that of appellant is furnished by the second deposition of the witness, Willie Jones, taken after he became a tenant of appellant. In his first deposition Jones testified that appellant told him he and appellee were partners in the purchase of the land. In the second he testified that the stenographer by whom his deposition was taken made a mistake in transcribing it by attributing to him the statement that appellant informed him of the partnership in question, whereas it was appellee from whom he received the information. We find in the record, however, the affidavit of the stenographer, admitted by agreement of the parties to be read as a deposition, in which she positively denies the alleged mistake and declares that the first deposition of Jones correctly gives his statement precisely as made by him.

Without further discussing the evidence we are unable to escape the conclusion that its weight fairly sustains the contentions of appellee as set forth by the allegations of the petition. As it is our conclusion that there was formed such a partnership between appellant and appellee as claimed by the latter, and the appellant's refusal to perform its terms is in effect admitted, the only question remaining to be determined is, what are the legal rights of the parties? It has been well said:

"Our law has always treated the partnership relation as founded in voluntary contract. It does not surprise parties into a partnership against their will, although it does not require an express agreement between them, nor is it bound by their statements of intention in associating themselves together for business transactions. It will regard their conduct rather than their language in deter-

mining whether their voluntary association in a business enterprise amounts to a partnership or not.'' 30 Cyc. 352.

In further pursuing this subject it is proper to say that no particular form of contract is necessary to the creation of a valid partnership. It can be oral or written, and it can result from the conduct of the parties or from the verbal communications between them; and in determining whether a particular contract constitutes a partnership between the parties to it, the controling purpose of the court should be to ascertain their intention as disclosed by the entire transaction. By the intention is meant the legal intention deducible from language of the contract and acts of the parties, and if they intend to do a thing which in law constitutes a partnership, they are partners, whether their purpose was to create or avoid that relation. A partnership may be created to conduct a commercial or other business requiring immense capital, or to be confined to a single venture or enterprise; hence, the parol agreement entered into by the parties in the instant case to jointly purchase, own and cultivate the Seaton farm, each to pay one-half the purchase price therefor and the two to share equally all expenses incurred in operating the farm and likewise the profits arising from their operation or ownership of same, posseses all the elements essential to the validity of a contract of partnership.

Nor is such a contract, as claimed by appellant, within the statute of frauds. On the contrary, we have uniformally held that such contracts are not affected by that statute, the object of which is not to aid but prevent fraud. Among the numerous cases so holding are the following: Mallon v. Buster and Allen, 28 R. 318; Garth v. Davis and Johnson, 27 R. 505; Vought v. Hogue, 32 R. 1061; Weideman v. Crawford, 142 Ky. 303; Fields v. Hoskins, 182 Ky. 446. The following additional authorities are to the same effect: 25 R. C. L. section 200; Bates v. Babcock, 95 Cold. 479; Jones v. Davis, 60 Kan. 309; Speyer v. Desjardins, 144 Ill. 641.

In Fields v. Hoskins, *supra,* the cases in which the validity of such contracts as the one here involved is recognized and distinguished from those of other classes, sometimes confused with them, which have been declared invalid, the reason given for holding valid a contract like that entered into by appellant and appellee is that there arises from the confidential relation between the parties and the terms of the partnership created by them an im-

plied trust, whether resultant or constructive, which the one partner acting as the agent of the other partner in making the purchase of land for the partnership will not be permitted to violate by causing the land to be deeded to himself; or, if he does so, shield himself behind the statute of frauds, for this neither the statute nor the principles of equity will allow.

It being our conclusion that the rights of the parties were correctly determined by the circuit court, the judgment of that court is affirmed.