## Marshall v. Bennett, et al.

(Decided May 7, 1926.)

## Appeal from Livingston Circuit Court.

1. Partnership—Burden of proving waiver of claim by partner in partnership property is on partner setting up waiver.

2. Partnership.—"Partnership" is status arising out of contract entered into by two or more persons agreeing to share, as common owners, profits and business carried on by all or any of them on behalf of all.

3. Partnership.—In determining whether contract constitutes a partnership, court should ascertain intention of parties, as disclosed by entire transaction.

4. Partnership.—Parties intending to do a thing which in law constitutes a partnership are partners, whether their purpose was to create or avoid relation.

5. Partnership.—Partnership may exist for a single venture or transaction.

6. Partnership—Agreement to Secure and Sell Gravel Land, and to Divide Profits Equally, Held to Constitute a Partnership.—Agreement between parties to secure option on gravel land, and to divide profits from sale of land equally, held to constitute a partnership.

7. Partnership—Evidence Held to Show Sale of Gravel Land to have Been Made by Partner in Own Name and for His Own Profit.—Evidence held to show that sale of gravel land was made by partner in his own name and for own profit, and not through partner's kinsmen under claimed sale by partner to kinsmen.

8. Partnership—Partner, Selling Property, on which Partnership had Option, Cannot Profit at Expense of Copartners by Concealing Sale through Transfer to Kinsmen Without Profit.—Partner, selling gravel land, on which partnership had an option, cannot profit at expense of copartners by transferring land to kinsmen without profit as cloak for his sale to another at profit, but must account to copartners for equal share of profits.

9. Partnership—That Plaintiff was Not Licensed Real Estate Broker is No Defense to Suit to Recover Profits of Venture to Buy and Sell Land.—In suit to recover profits derived from purchase and sale of land under partnership agreement, fact that plaintiff was not a licensed real estate broker is no defense.

10. Partnership.—Partner is not obliged to pay attorney's fee of copartner incurred in defending suit brought against him to account for profits wrongfully withheld.

C. C. GRASSHAM and L. B. ALEXANDER for appellant.

CHAS. FERGUSON and FERGUSON & WELLS for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

The appellees, Z. A. Bennett and M. E. Scyster, are partners engaged in the insurance business in Paducah, Kentucky, in the course of which they also do on the side a small real estate business. On March 13, 1924, they received a letter from W. H. Parks, who lived at Hartford, Kentucky, but who was then in Staunton, Virginia, inquiring whether or not the appellees could procure an option on a gravel pit somewhere near Gravel Switch, Kentucky, as he had a party who was interested in such a proposition. Bennett took this Parks letter and went to Grand Rivers, Kentucky, to see if he could find some gravel land which might be optioned. The appellant, C. H. Marshall, lived near Grand Rivers and was engaged in buying and selling gravel lands in that community as Bennett knew. Bennett got in touch with Marshall and took up with him the optioning of some gravel property. They then visited several such properties, among which was some land owned by W. C. Bell. Nothing came of this visit and Bennett returned to Paducah. On the evening of his return, Bell approached Marshall urging him to take an option on his land. Marshall declined to do so, at that time telling Bell that he would have to get in touch with his partner, Bennett, before he could take the matter up with him. A few days thereafter Bennett returned to Grand Rivers and he and Marshall went to Bell and took an option on his property, for which Marshall paid the sum of $1.00. The option was in Marshall's name, was dated March 29, 1924, and ran for sixty days. Bennett at once wired Parks to the effect that they had secured the option and he paid for that expense out of his pocket. Bennett testifies that, when he first took up the matter with Marshall, it was agreed between him and Marshall that Marshall, Bennett's firm and Parks should procure this option as partners; that each one should endeavor to sell the property at a profit over the option price, and that, if successful, they would divide the profits three ways, Marshall to have one-third, Bennett's firm a third and Parks a third. Marshall denies this, but the testimony of Bell and the conduct of Marshall subsequent to the taking of the option strongly corroborates Bennett's version of this transaction. The chancellor found that there was a partnership and in this we concur. As soon as the option had been procured, a number

of telegrams and letters passed between Parks and Bennett in the effort on Bennett's part, through Parks, to make an advantageous sale of this property. On April 29th Bennett wrote Marshall to the effect that Parks' customer would be in Grand Rivers most any day for the purpose of inspecting the gravel property they had for sale. In response to this letter Marshall wrote Bennett on May 1st that he had sold the property to a home concern, which had agreed to take him in with it and for Bennett to notify Parks' customer that it was too late, but that, if the customer would be willing to pay a higher price than had theretofore been quoted him, he would consider such an offer. Bennett went at once to see Marshall. Marshall claims that Bennett on this visit conceded that Marshall had acted within his rights and abandoned any claim that he had to the property. Bennett denies this and the chancellor found that Bennett made no such waiver. As the burden was on Marshall to prove this, and as he failed to sustain such burden, we accept the finding of the chancellor on this issue. Bennett then ceased any further efforts to dispose of the property. The option, as seems to be agreed, provided that Bell was to receive $12,000.00 for his property and that whatever Marshall and his associates got above that price, less whatever expense they were put to in selling the land, should be their profit. On May 5th Marshall paid Bell $500.00 on the option price and Bell receipted for the same on the back of the option. On May 29th a deed was drawn from Bell to Marshall for the property in question, but this deed was neither signed nor acknowledged until the following day, and then simultaneously therewith Marshall made a deed of the property to the Memphis Stone and Gravel Company. This deed not being accepted on account of some error in the survey, another deed was subsequently executed by Marshall to this company of date June 26, 1924, but was not recorded until July 12, 1924. Marshall gave to Bell, when Bell executed his deed, his check for the purchase price, which check he requested Bell to hold up until he could get a check from the Memphis Stone and Gravel Company to make the same good. This Bell did. The Memphis Stone and Gravel Company paid Marshall $22,894.00 for the property. When Bennett heard of this, he brought this suit claiming that, as partners, he and Scyster were entitled to one-third of the profit made on the sale to the Gravel Company, the third amounting to $3,631.33. Mar-

shall defended on the theory, first, that there never was any partnership, and secondly, that the property had been sold without profit on May 5th to a kinsman named Doyle Marshall; that all the subsequent transactions were Doyle Marshall's transactions and not his, and that any profit thereafter realized was Doyle Marshall's profit and not his. Marshall further claimed that he and Doyle Marshall were, in negotiating the sale to the Gravel Company, put to an expense of $730.50 by way of surveys and attorney's fees and that should any judgment be awarded against him these expenses should be taken into consideration. By an amended answer, he further claimed that Bennett was not a licensed real estate broker and hence could not maintain this action.

The lower court found that there was a partnership between these parties; adjudged that the sale to the gravel company was the appellant's transaction and not Doyle Marshall's transaction; gave judgment to the appellee for one-third of the profit claimed; and dismissed appellant's counterclaim. From that judgment this appeal is prosecuted.

A partnership is a status arising out of a contract entered into by two or more persons whereby they agree to share, as common owners, the profits of a business carried on by all or any of them on behalf of all of them. Shumaker on Partnership, 2nd Ed., p. 2. In determining whether a particular contract constitutes a partnership between the parties to it, the controlling purpose of the court should be to ascertain their intention as disclosed by the entire transaction. If the parties intend to do a thing which in law constitutes a partnership, they are partners whether their purpose was to create or avoid that relation. Stewart v. Stovall, 191 Ky. 508, 230 S. W. 929. A partnership may exist for a single venture or transaction. Stewart v. Stovall, *supra.* Applying these principles to the facts before us, we find that Marshall and Bennett entered into an agreement whereby an option on gravel land was to be taken; the parties should then exert their best efforts to sell the land; and the profits less the expense should be divided three ways. Marshall regarded this as a partnership, for he told Bell that he would have to consult "his partner" before he could take the option. His conduct thereafter in trying to mislead Bennett about the sale, telling him there had been no profit in it, whereas the evidence plainly shows that he tried to cloak his sale of the prop-

erty made at a considerable profit to the Memphis Stone and Gravel Company under a claimed sale to his kinsman, Doyle Marshall, also demonstrates that he thought there was a partnership, else there would have been no need for such conduct on his part. The agreement between the parties comes within the definition of a partnership. The cases of Gottschalk v. Smith, 156 Ill. 377, 40 N. E. 937, and Bruce v. Hastings, 41 Vt. 380, relied on by appellant are not in conflict with these views, for an analysis of them shows that the parties in those cases intended simply to share the gross returns of a joint venture which never creates a partnership. Shumaker on Partnership, 2nd Ed., p. 41, and cases cited. Moreover, these cases so relied upon give but cold comfort to appellant since in each case the court upheld a recovery in favor of the wronged joint venturer under a claim for "money had and received." In the instant case, though, the parties intended to share only net returns. There was some expense at the start—the cost of the option and the telegrams—trivial, to be sure, but, borne equally by Marshall and Bennett, they indicate that the parties contemplated no gross returns but returns out of which expenses would first have to come. Marshall's counterclaim also tends to establish this idea of the parties. We therefore conclude that there was a partnership here.

We also are of opinion that the lower court from the evidence correctly held that the purchase from Bell and the sale to the Memphis Stone and Gravel Company were appellant's transactions and not Doyle Marshall's. Everything was done in appellant's name. Both Bell and the gravel company say they thought they were dealing with appellant. The money passed through his account. The deeds passed through his name. As against all this, we have appellant and Doyle Marshall saying that it was Doyle Marshall's deed, and the latter undertaking to say that he had everything transacted in appellant's name for a purpose of his own. As to what this purpose was, he is discreetly silent. Being convinced then that this was appellant's transaction, it follows that as a partner he could not profit in the fashion he did at the expense of his copartners. George v. Sohn's Admr., 191 Ky. 428, 230 S. W. 904. The court correctly adjudged to appellees in this suit for an accounting the third of the profits of this transaction.

In just what way the fact that Bennett was not a licensed real estate dealer is any defense to a suit for an

accounting growing out of the purchase and sale of this Bell land is not apparent to us. This was not a suit by Bennett to recover commissions coming to him for his work as a real estate broker, but, even if it had been, the fact that he had no license to operate as such would be no defense. Tussey v. Felty, 206 Ky. 506, 267 S. W. 765. This was a suit to recover a share of the profits of a venture entered into for the purpose of buying and selling some land. Clearly Bennett's status as a real estate broker has no place in the case.

So far as appellant's counterclaim is concerned, it is sufficient to say that appellant does not prove that he incurred any of the expense set out therein. It is true that Doyle Marshall says that he did spend some money for the items, but when cross-examined the only one he could definitely establish was one of $200.00 for an attorney's fee which, he admitted, covered also the fee of the attorney for defending this action. Even if appellant is entitled to credit for what Doyle Marshall spent, it is plain he has failed to prove any such expenditures except this attorney's fee, which it is equally clear he cannot use as a counterclaim against appellee. A partner is not obliged to pay the attorney's fee of a copartner incurred in defending a suit brought against him to account for profits wrongfully withheld. The lower court correctly dismissed this counterclaim.

The judgment of the lower court is therefore affirmed.