# Harmount & Woolf Tie Co. v. Baker.

(Decided Dec. 15, 1933.)

C. W. HOSKINS for appellant.
J. M. MUNCY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The dominant question in this case is, What are the contractual relations of the Harmount & Woolf Tie

Company and Floyd Gross and Clayton Gross during the period of time covered by their contracts?

In March, 1927, the Harmount & Woolf Tie Company and Floyd Gross entered into a written contract for the purpose of manufacturing timber on a tract of land in Leslie county into ties and logs, and delivering same. It was stipulated therein, among other things, that Gross was to be charged with $3,000, the purchase price of the standing timber, and all advancements made to him with which to defray the cost of manufacturing and delivering the timber products. For so financing him Gross agreed to pay it 10 cents per tie for all ties delivered and a commission of $5 "on all white oak and chestnut oak taken up, under the contract"; and, as the logs and their timber products were sold by the Harmount & Woolf Tie Company, Gross was to be credited by the sale price of the ties, the logs, lumber, and other timber products. On the completion of the contract, the accounts of the parties were to be adjusted; and the Harmount & Woolf Tie Company was to pay Gross whatever amount was shown to be due him; or, on the other hand, if the account showed that Gross owed it, in that event he was to pay whatever amount was due it.

Gross was to manufacture and deliver the ties and logs as fast as possible and at the earliest possible date, all expenses of manufacturing and delivering same to be paid by him. The manufacturing and the work incident thereto were to be done by him in a workmanlike manner and to the satisfaction of the Harmount & Woolf Tie Company. It reserved the right, if it became necessary for it to protect its interest, to cancel the contract, take charge of the equipment of Gross, manufacture and deliver the ties and lumber, allowing to him, as rental of his mill and equipment, 5 cents per tie and $1 per thousand feet of lumber manufactured on the mill. He agreed to get all ties in good shape and with due care run them by water to Athol, assuming all responsibility for the safe-keeping and delivery. It was agreed that he should have full control of the hiring and discharging his employees, and that it should have no control over them or right to instruct or direct him or them in the manufacturing and delivery of the ties, logs, and other of the timber products.

On July 3, 1928, the written contract was altered

by a parol agreement. S. H. Gabbard and others entered into a written contract with the Harmount & Woolf Tie Company to cut, log, and deliver the timber sold in the log. Floyd Gross was to continue to cut, deliver, and manufacture, at the mill, timber on Merull branch, into ties; for the cutting and manufacturing the ties therefrom and delivering same to Athol, he was to be paid 60 cents per tie delivered at Athol. For cutting, delivering, and manufacturing the timber on another branch and rafting and delivering it at Athol, he was to be paid 80 cents per tie. For the lumber manufactured from the timber on the two branches, he was to be paid $2 for the cutting, and $6 per thousand feet for sawing and stacking it on the millyard.

About the 1st of August, 1928, Frank Boggs and Clayton Gross entered into a contract with Floyd Gross to saw the timber covered by the contract of Floyd Gross with the Harmount & Woolf Tie Company. In pursuance to this contract, they furnished the machinery and labor with which to manufacture the ties and lumber thereafter delivered under the contract of Floyd Gross with the Harmount & Woolf Tie Company.

During the period of the cutting, manufacturing, and delivering the ties and lumber by Floyd Gross and also Clayton Gross and Frank Boggs under their contract with Floyd Gross, the employees of Floyd Gross and also of Boggs and Gross were furnished board by Mat Baker. After the contracts for the manufacture and delivery of the ties under the contracts, supra, Mat Baker began to cut, remove, and convert to his own use timber standing on the land from which Gross manufactured the ties and lumber; also to remove and convert to his own use lumber stacked on the millyard in accordance with the contract of Gross.

This action was brought by the Harmount & Woolf Tie Company against him to recover the value of this timber and lumber, and for injunctive relief. Baker by answer asserted title to 9,000 feet of lumber, and further alleged that during the years 1927 and 1928 he had furnished board and other things to the employees of the Harmount & Woolf Tie Company, and for which it was indebted to him $444.

On a trial by the court, without the intervention of the jury, a judgment was rendered decreeing Baker

the owner of the lumber to which he asserted title in his answer by purchase from Floyd Gross, and that he recover the $444 for boarding employees of Gross, Clayton Gross, S. H. Gabbard, Ed. Drake, M. T. Evans, and J. C. Little, and they were partners of the Harmount & Woolf Tie Company in the execution of the contracts, supra, and therefore the Harmount & Woolf Tie Company was bound by their acts in the selling of the lumber to Baker as claimed by him and in making arrangements with him to board them and employees while cutting, manufacturing, and delivering the logs, ties, and lumber.

The contracts of the Harmount & Woolf Tie Company with Floyd Gross, and with S. H. Gabbard and others, and of Floyd Gross with Boggs and Clayton Gross, establish beyond cavil that Floyd Gross, Boggs and Gross, Gabbard and others were independent contractors, and that the Harmount & Wolf Tie Company was in no sense a partner with either of them in the cutting, logging, sawing, manufacturing, and delivering the timber covered by their respective contracts.

In Marshall v. Bennett, 214 Ky. 328, 283 S. W. 115, 116, we said:

"A partnership is a status arising out of a contract entered into by two or more persons whereby they agree to share, as common owners, the profits of a business carried on by all or any of them on behalf of all of them. Shumaker on Partnership (2d. Ed.) p. 2. In determining whether a particular contract constitutes a partnership between the parties to it, the controlling purpose of the court should be to ascertain their intention as disclosed by the entire transaction. If the parties intend to do a thing which in law constitutes a partnership, they are partners whether their purpose was to create or avoid that relation. Stewart v. Stovall [supra],"

191 Ky. 508, 230 S. W. 929.

A partnership relation contemplates the sharing of profits and the express or implied agreement to bear losses, Frank v. Thompson, 207 Ky. 335, 269 S. W. 295; Mattingly v. Stone's Adm'r, 35 S. W. 921, 18 Ky. Law Rep. 187; but even profit-sharing is not a conclusive

test of the relation, Heran v. Hall, 1 B. Mon. 159, 35 Am. Dec. 178; Fuqua v. Massie, 95 Ky. 387, 25 S. W. 875, 15 Ky. Law Rep. 849; Lapp & Flersheim Co. v. Clark's Adm'r, 85 S. W. 717, 27 Ky. Law Rep. 452; Graham v. Swann, 148 Ky. 608, 147 S. W. 11; Blackerby v. Oder, 201 Ky. 403, 257 S. W. 43; Jewell v. Janes, 238 Ky. 63, 36 S. W. (2d) 875.

The sharing of profits is not only important as evidence tending to prove the relation, but an agreement to share profits is an essential element. Its absence is conclusive that the partnership does not exist. Boreing v. Wilson, 128 Ky. 570, 108 S. W. 914, 33 Ky. Law Rep. 14; Edwards v. Johnson, 219 Ky. 113, 292 S. W. 750. The paying by the Harmount & Woolf Tie Company the $3,000 for the timber and its advancing money with which Floyd Gross was enabled to execute his contract with it, for a stipulated consideration, without its sharing in the profits or the losses, did not create a relation of partners between it and Gross. The same is true as to its contract with Gabbard and others. It was not a party to the contract of Clayton Gross and Boggs with Floyd Gross by which he sublet to them the manufacturing a portion of the timber with their mill, and at their own expense; and therefore the relation of partners could not and did not exist between it and Boggs and Gross.

In American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115, 118, we adopted this definition of independent contractor:

"A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details."

We therein further stated:

" 'The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.' See Larson v. American Bridge Co., 40 Wash. 224, 82 P. 294, 111 Am. St. Rep. 904; Barton v. Studebaker Corp., 46 Cal. App. 707, 189 P. 1025. This general

test is universally recognized by the courts and text-writers. Amann v. City of Tacoma, 170 Wash. 296, 16 P. (2d) 601; Ballard & Ballard Co. v. Lee's Adm'r, 131 Ky. 412, 115 S. W. 732; Messmer v. Bell & Coggeshall Co., 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1; Yellow Poplar Lumber Co. v. Adkins, 221 Ky. 794, 299 S. W. 963; Bowen v. Gradison Construction Co., 236 Ky. 270, 32 S. W. (2d) 1014; Madisonville, H. & E. R. Co. v. Owen, 147 Ky. 1, 143 S. W. 421.''

It was not attempted to be shown that the Harmount & Woolf Tie Company reserved by its contract the right to exercise, or that it exercised or exerted, any control of, or over, the work of cutting, manufacturing or delivering the ties, logs, lumber, or other products of the timber. This privilege or right on its part was an indispensable element necessary to create the relation of principal and agent; otherwise the contractors are and were independent contractors.

Applying these principles to the facts as they are established by the contracts of the parties, the terms of which are not disputed by Baker, it is very plain that the relations of partners did not exist between the Harmount & Woolf Tie Company and Gross, or Clayton Gross and Boggs or Gabbard and others, at the time Baker asserts he purchased the lumber from Floyd Gross and furnished them the board and other things comprising the items of $444. The judgment of the trial court was not authorized by the facts. Therefore it is reversed, with directions to dismiss the counterclaim of Baker, with a judgment for the Harmount & Woolf Tie Company for the reasonable value of the timber, and an order restraining Baker from interfering with the timber or lumber of the company and for proceedings consistent with this opinion.