# Pearl Bowling & Co. v. Hensley & Hensley.

(Decided May 28, 1935.)

M. C. BEGLEY for appellant.

FAULKNER & FAULKNER and J. M. MUNCY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

H. M. Hensley owned 900 trees, standing on Mill branch of Hell for Sartin' creek in Leslie county, Ky. On the 13th day of October, 1924, he entered into a written contract with A. H. Hensley, whereby the latter agreed to cut, haul, and deliver of the timber, as many as 1,000 logs on the banks of Middle Fork river by March 1, 1935; the remainder at Belle Point, Ky. On the day this contract was entered into, they entered into a contract with the Belle Point Lumber Company of Belle Point, Ky., by which it agreed to buy, and they to sell, the timber covered by their contract, to be measured as delivered and paid for according to an agreed schedule of prices.

For cutting, hauling, and delivering the timber, A. H. Hensley agreed to receive, and H. M. Hensley agreed

652

to pay, two-thirds of the price at which the Belle Point Lumber Company contracted to pay them. It was stipulated in the contract, if A. H. Hensley failed to carry out his part of the contract, H. M. Hensley had the right to have the timber cut, hauled, and delivered, and charge the costs thereof to A. H. Hensley and retain the same out of the sale prices paid them by the Belle Point Lumber Company. A. H. Hensley began to carry out the contract. To do so, he was required to, and did, purchase merchandise from the firm of Pearl Bowling & Co., whose business was under the management and control of T. T. Bowling. Orders for specified amounts were signed by A. H. Hensley and delivered to those to whom he became indebted while carrying the contract, and when presented to Pearl Bowling & Co. they were paid and charged on the firm's books. The evidence is conflicting as to whose name in which the merchandise was charged on the books of the firm. T. T. Bowling deposed that the same was charged to both H. M. and A. H. Hensley; A. H. Hensley, the contrary. The books of the firm have not been brought here. We are, therefore, deprived of the privilege of examining them for ourselves. A number of witnesses testified that the name of H. M. Hensley had been added on the books, showing the merchandise was charged to him and A. H. Hensley. The testimony of Bowling and A. H. Hensley as to this question is conflicting. That of the former is predicated on the statement that A. H. Hensley presented him with a copy of a contract which showed, ex facie, H. M. Hensley was a partner, and by reason thereof, together with the statements of A. H. Hensley showing H. M. Hensley was a partner in the cutting, hauling, and delivering the timber, the firm was induced to sell and deliver the merchandise and charge the same to both A. H. and H. M. Hensley. A. H. Hensley declares that after the merchandise had been delivered to the bearer of the order to which he had signed his individual name and charged against him on the books of the firm, they had a settlement, and he executed and delivered his note for the amount of the account now sued on. T. T. Bowling denies A. H. Hensley's statement in this respect.

The contract of the Hensleys shows very clearly that they were not partners in the cutting, hauling, and delivering the timber.

"A partnership is a status arising out of a contract entered into by two or more persons whereby they agreed to share, as common owners, the profits of a business carried on by all or any of them on behalf of all of them. Shumaker on Partnership [2d Ed.] p. 2. In determining whether a particular contract constitutes a partnership between the parties to it, the controlling purpose of the court should be to ascertain their intention as disclosed by the entire transaction. If the parties intend to do a thing which in law constitutes a partnership, they are partners whether their purpose was to create or avoid that relation." Marshall v. Bennett, 214 Ky. 328, 283 S. W. 115, 116; Harmount & Woolf Tie Co. v. Baker, 251 Ky. 795, 66 S. W. (2d) 45. When the contract is tested by this principle, clearly the Hensleys were not partners.

Their contract with the Belle Point Lumber Company contains no statement tending to show they were partners. It is not definitely shown that the latter contract was exhibited by A. H. Hensley to T. T. Bowling. However, conceding that it was, it does not show the relation of partners between the Hensleys. At most, it shows they were joint owners of the timber. Conceding they were joint owners, the testimony of A. H. Hensley, together with that of other witnesses, very clearly establishes that the firm sold on the credit of, and charged the merchandise to, A. H. Hensley, and at that time, and until long thereafter, it did not claim that the same had been sold on the credit of H. M. Hensley or on the joint credit of the Hensleys. It is our conclusion that the judgment of the chancellor is sustained by the evidence.

Therefore, the judgment is affirmed.