## Elcomb Coal Co. v. Hall Land & Mining Co.

(Decided March 25, 1938.)

774

CHARLES B. SPICER for appellant.

B. M. LEE and E. H. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal by the Elcomb Coal Company from a judgment of the Harlan circuit court, rendered at its May term, 1937, for royalties held due and owing the appellee (plaintiff below) under a coal lease contract, of date May 16, 1916, which had, after various transfers and assignments of it, come into the ownership of the appellant company and under which it has for several years past been operating and mining and shipping coal from within the boundary of land therein embraced.

Our construction of this lease is here required for a proper determination of the propriety of the judgment appealed from in its award of a recovery to the appellee, Hall Land & Mining Company, of the royalties provided by the lease.

It is appellant's contention, in part, that the appellee's interest in and as a party to this lease had terminated before it had acquired the lease, and that never having conducted any mining operations upon its Hall tract of land embraced within the leased boundary as tract No. 1, or taken any coal therefrom, it was under no obligation to account to appellee for any part of the royalties owing upon the coal mined from another tract, of different ownership, also embraced in the lease and upon and to which its mining operations had been entirely conducted and confined.

The facts and circumstances surrounding the making of this lease and the later transactions and dealings had between its makers and the various lessees thereof are, as shown by the record and clearly by the language and provisions of the lease itself, so far as we deem here pertinent, as follows:

"This endenture entered in duplicate this May 16, 1916, by and between W. H. H. Smith and W. F.

Hall and wife, Lucy Hall, of the county of Harlan, state of Kentucky, (hereinafter called the lessors), parties of the first part, and J. D. Wheeler and Geo. F. Ryan, of the same county and state (hereinafter called the lessees), parties of the second part.

"Witnesseth: That for and in consideration of the rents, royalty covenants and agreements herein set forth, said lessors have this day let and leased unto the lessees for the full term of 30 years or until the coal is mined out under said land, for the purpose of mining coal and holding possession thereof all of the two tracts of land hereinafter described on the waters of Catrons Creek in Harlan County Kentucky.

"First tract owned by W. F. Hall (description following)

"There is excepted from this lease the Wallins Creek vein of coal containing about fifty acres heretofore leased to Moss & Sons Coal Company as shown by lease dated October 13, 1915.

"Second Tract: Belonging to W. H. H. Smith (description following)."

By the second paragraph of the lease, it was provided that the two tracts of land were leased for "mining purposes only, and the lessors shall retain the right to the use of said property for all purposes not inconsistent with the mining rights and privileges set forth in the lease."

By the fourth paragraph it was provided that:

"The lessees herein covenant and agree to pay to the lessors the rents and royalty of ten cents per ton of 2,000 lbs, *for all coal mined and shipped or mined and sold from said leased premises * * * and by agreement of W. F. Hall and W. H. H. Smith, W. F. Hall is entitled to one-third of the royalties and W. H. H. Smith is entitled to two-thirds of the royalties, and said lessees shall pay to the said W. F. Hall direct one-third of the royalties and they will pay to the said W. H. H. Smith direct two-thirds of all of the said royalties accruing under this lease.*" (Italics ours.)

Paragraph 8 provides that:

"All the veins of coal in said boundary above sur-

veyed that are workable are embraced within this lease, but it is understood that if any vein of coal within said boundary shall be 40 inches in thickness or less or shall be found to contain as much as six inches of mining seam of dirt or rock or other foreign matter and neither the top nor the bottom strata of coal as much as 34 inches of solid coal, then said seam shall be deemed to be unworkable and it shall be within the option of the lessees as to whether they will continue to operate said seam or not under the terms of this lease.''

Paragraph 14 provided that the lessees should have the right to acquire adjacent land, to mine and pull adjacent coal over the land embraced within the lease and send it out over the spur line railroad of W. H. H. Smith, and for such privilege, the lessees agreed, by the consent of W. F. Hall, one of the lessors, to pay W. H. H. Smith, the other lessor, for all such coal so mined and shipped (from lessees' adjacent land) that is hauled or passed over the second boundary (Smith's tract No. 2) and over the railroad of the said Smith, one cent per ton.

''It being agreed by all parties to this contract that the one cent per ton above mentioned is to be paid to the lessor Smith because he has furnished the camp site, necessary mining frontage, his railroad spur track and wagon road to and from said camp. All of which W. F. Hall has no interest in *except by reason of the covenant and agreement providing for the joint lease of whole property.* It is further agreed by all parties to this contract that if the mining operation to be erected and installed on the first tract or boundary of this lease, the lessees or their assigns shall acquire any additional or adjacent property by lease or purchase and desire to haul or pull the same over the land covered by the first boundary of lease and pass it over the mining operation then the same shall be done upon the terms and conditions above set forth in this paragraph and one half of one cent per ton shall be paid to W. H. H. Smith and one half of one cent per ton shall be paid to said W. F. Hall.'' (Italics ours.)

Paragraph 16 provided that:

''It is agreed by and between the lessors and lessees that the second described above boundary (the

Smith tract) is leased for immediate operation (but the first boundary (the Hall tract) is not leased for immediate operation) on which second boundary the lessees agree to begin the operation at the time and continue the same in the way and manner set forth in section 15 of this lease; *after putting in the operation on the second boundary above described and putting it in actual operation, the lessees will have two years in which to prospect, examine and put a test on the first boundary to see whether the Harlan seam of coal and the other seams of coal thereon or any of them are minable under the requirements of Section 8 of this lease and if the seam is minable under said section the first boundary shall be deemed leased and lessees agree to immediately install* a coal plant thereon or sufficiently near thereto to mine the coal on the first boundary, or if the lessees elect so to do they may mine the coal from said first boundary and pass the same through and over the plant installed on the second boundary.''

Some time after the execution of this joint lease, on May 16, 1916, and before November 14, 1919, the lessor, W. H. H. Smith, conveyed his tract No. 2, mentioned and included in the lease, to the Black Eagle Coal Corporation. Some time after November 14, 1919, W. F. Hall died, and his widow and children conveyed all of his lands to the holding company, Hall Land & Mining Company, appellee herein. The boundary No. 1 mentioned in the lease was among the lands so conveyed.

Some time after November 14, 1919, the McCombs Coal Company acquired this lease and was thereunder conducting a mining operation of the coal on the Smith tract, referred to in the lease as tract No. 2.

At such time, November 14, 1919, the coal under tract No. 1 of the lease (Hall's tract) had not been explored, it is stated, as contemplated by paragraph 16 of the lease, as hereinabove set out, and the two years thereby allowed for examination and exploration of tract No. 1, to determine if it be mineable coal, as defined by the provisions of section 8 of the lease, having expired, a supplemental lease contract was then executed, described as a lease between W. F. Hall and wife and the Black Eagle Coal Corporation, the purchaser of W. H. H. Smith's tract No. 2 embraced in the lease (but

which did not sign this supplemental lease) to the Mc-Combs Coal Company, wherein it was recited that the said W. H. H. Smith and W. F. Hall and wife, having on May 16, 1916, executed and delivered to J. D. Wheeler and George F. Ryan, the aforesaid coal lease contract on two tracts of land, upon the terms and conditions therein set out, and the said Hall and Smith on that day being the respective owners of the two tracts of land therein described, and since the said date of execution of said lease W. H. H. Smith "has sold and conveyed the tract of land claimed by him to the Black Eagle Coal Corporation, who now owns and claims the said tract of land, and the said Wheeler and Ryan and their assigns have transferred and conveyed their rights under the said lease contract to the McComb Coal Company who now owns and claims the said lease contract and the rights of J. D. Wheeler and George F. Ryan, contained in said lease.

"Now the lessors, as above herein set forth, and the lessee as above herein set forth, desire to make a supplemental lease contract for the purpose of making paragraphs 1, 8 and 16 of said lease contract of May 16, 1916, more definite, specific and certain, so that section 16 especially will be simplified and subject to one meaning only.

"It is agreed by and between the lessors and the lessee * * * that

"Inasmuch as the second boundary (the Smith land) described in said lease contract is now being operated in accordance with the provisions of the lease and the parties to said lease desire to extend the time within which the lessee shall have the right to prospect, test and mine the first boundary (the Hall land) described in said lease, it is agreed * * * that section 16 of the said lease contract be, and it is hereby amended and modified to read as follows:"

Section 16:

"The present lessee shall, on or before two (2) years from date hereof, prospect, examine and make such tests as it may desire on said first boundary, or land to determine whether the Harlan seam of coal, or any other seam of coal, from the surface or water level up to the Wallins Creek seam of coal,

are mineable or workable under the requirements of section 8 of said lease contract, and shall, on or before two years from date hereof, notify the lessors whether it elects to operate said first boundary, and in the event it so elects, the said first boundary, shall be deemed leased under all of the provisions of said lease contract. * * *

"If within two years from the date hereon the lessee does not notify the lessors of its election to operate said first boundary as herein provided, then all rights and obligations of the lessee with respect to said first boundary shall cease and determine."

While this instrument, termed a "supplemental lease," stated that it was executed by the joint lessors, W. F. Hall and wife and the Black Eagle Coal Corporation, the same was in fact only signed and executed by W. F. Hall and wife.

Further it appears that the Black Eagle Coal Corporation, by its deed of August 13, 1931, sold and conveyed its interests in the Smith land to one H. K. Buttermore, and further that the appellant, Elcomb Coal Company did, about the same time, purchase all the equipment owned and operated by the lessee, McComb Coal Company, but it contends that it did not purchase any lease owned by it on tract No. 1, embraced in the original lease, which it claimed had then terminated under the provisions of the supplemental lease, by reason of its having made tests of tract No. 1, pursuant to the authority given by the supplemental lease and found said tract not to contain coal measuring up to the standard provided by section 8 of the lease, for which reason the lease of the Hall land, according to its terms, had terminated.

Thereafter, in January, 1936, this action was brought by the appellee, Hall Land & Mining Company, against the defendant, Elcomb Coal Company, alleging that it had become the owner by various transfers of the 1916 coal lease, which it had been operating, as such, for a number of years, under its terms, providing for the payment of the royalties of 10 cents per ton for the coal mined and sold from the said leased premises; further, that the defendant company was in arrears in its payment of royalties in the amount of $480 at that time.

To the petition, defendant filed first a general de-

murrer and, without waiving same, filed its answer and counterclaim; also a first and second amended answer and counterclaim.

By the first paragraph of the answer, defendant denied "that it had ever mined any coal or used in any way the land owned by W. F. Hall or his heirs, or the Hall Land and Mining Company, denied that it had removed or mined from said lease or the land owned by W. F. Hall * * * 1,800 tons per months, or any number of tons or any amount of coal whatever."

Further, by its counterclaim, it set up the lease sued on in the petition therein construing and denominating same a partnership between Smith and Hall, and alleged that by the sale of Smith's interest to the Black Eagle Coal Corporation and also by the later death of W. F. Hall the partnership was terminated.

Further, it pleaded that in August, 1931, the latter corporation had sold its interest in tract No. 2 of the lease, purchased of Smith, to H. K. Buttermore, also its purchase from the McComb Coal Company, lessee, of all its equipment used in operating the Smith tract (No. 2) of the lease, but that it did not purchase from that company any lease on tract No. 1, owned by the lessor Hall, nor had it, since its purchase of the equipment of the McComb Coal Company in 1928, operated on tract No. 1 (appellee's tract) under the lease bought of the McComb Coal Company, and that it had by mistake of law and fact paid over to the said company $6,649 in royalties, which it pleaded as a counterclaim and for which it asked judgment.

Further, it pleaded the supplemental lease of November 14, 1919, claiming that the original lease of May, 1916, had, by force of and under its provisions, "ceased and determined."

Further, an amended petition was filed, alleging that since the filing of this suit, there had further accrued and was owing a royalty rental of an additional $480, for which plaintiff also asked to be adjudged a recovery.

To the answer, amended answers, and counterclaim, demurrers were made and extended thereto, which the court sustained, when, the defendant declining to plead further, the cause was submitted to the court for judgment, which was rendered in accordance

with the prayer of the petition and amended petition. Complaining of this judgment, defendant has prosecuted this appeal therefrom.

The appellant, attacking this judgment and asking its reversal, first alleges that the contract of lease executed by Hall and Smith in May, 1916, whereby they jointly leased their separately owned tracts Nos. 1 and 2 upon a royalty rental of 10 cents per ton for a period of thirty years to the named lessees, with the distinct provision therein made that the royalties owing by lessees for any and all coal mined from within the leased boundary, containing the two tracts, should be directly paid to the lessors (one-third thereof to W. F. Hall and two-thirds to W. H. H. Smith), constituted a pooling of interests and a partnership arrangement between them, which was later dissolved upon the sale by Smith of his interest before November, 1919, and the later death of the joint lessor, W. F. Hall.

It may be conceded, if this lease agreement made was a contract of partnership, that by the sale of Smith's interest in the partnership property, as well as by the later death of Hall, the partnership would have been dissolved and terminated, but we are of the opinion that the lease in question does not show by its terms and character of lease arrangement made that their agreement so contemplated or was effective to constitute a contract of partnership; but, on the other hand, that same was but a joint lease entered into by Hall and Smith, for reasons and considerations deemed by each to be of mutual advantage to them.

As helpful, by way of throwing some light upon what was the real understanding and purpose of Hall and Smith in making this contract as a joint lease and what was its objective and character, we hereinabove have quoted very fully from the language of the lease itself, which clearly presents the circumstances existing when it was made. The lessor Hall had an unleased and inaccessible tract of land, upon which it was difficult to get development and also a spur branch railroad leading from the Louisville & Nashville main line over to other of his coal lands nearby this tract (the coal value of which was doubtful). On the other hand Smith had the adjoining tract No. 2, practically inaccessible, save as it could be reached through the Hall lands and also affording a good mining campsite, which was not

given by Hall's tract No. 1. Therefore, these parties, seeking the mutual advantage of a joint lease arrangement, thereby agreed to lease each of their tracts upon the terms that Smith was to construct thereon a branch road from his tract No. 2 across Hall's land, where it connected with his branch railroad, and was to have the right of hauling the coal mined therefrom over and across his land and over his branch railroad, in consideration of which Hall was to receive one-third of the royalties paid upon the coal mined and taken from Smith's tract or from either of the two tracts embraced within the lease.

The lease shows clearly by its terms that it was one running with the two tracts of land, which neither Smith nor Hall had the right to cancel, nor was same terminated by the death of either or a sale by either of their separately owned tracts of land embraced within the lease.

This being the situation, when the Black Eagle Coal Company bought out Smith's tract of land, it bought it subject to the terms of this lease contract made in May, 1916, and further the lease given thereon to the McComb Coal Company and later to the appellant, and it took the land subject to the contract provisions as to the payment of royalties in the proportions named in the lease of one-third thereof directly to Hall or his heirs and two-thirds thereof to Smith or his heirs and assigns. The lease in question contained no provision or undertaking of Smith and Hall to share the loss or profits realized from the leasing venture made.

The terms and provisions of the contract of lease here made are not in harmony with those required for constituting a contract of partnership between Hall and Smith in making this joint lease: First, because a different intention on the part of the parties is disclosed by the entire lease transaction. Pearl Bowling & Company v. Hensley & Hensley, 259 Ky. 651, 83 S. W. (2d) 31 Also, the mere participation by Hall in a one-third part of the royalties received upon coal mined from within any part of the boundary was not in itself alone sufficient to establish a partnership relation between him and Smith. Jewell v. Janes, 238 Ky. 63, 36 S. W. (2d) 875. The law will not create the relationship of a partnership between parties merely as the consequence

of a course of conduct and dealing between them in making a joint lease which is naturally referable to an existing situation, wherein such joint action offers a mutual advantage to them, as here was found by reason of the inaccessibility of their lands and of the advantage offered by the arrangement in securing both a way and means of transportation for the development and mining of the coal which might be found upon their separately owned tracts.

A "partnership relation" has been defined by this court as one founded on a voluntary contract, which contemplates a share of both profits and losses. Frank v. Thompson, 207 Ky. 335, 269 S. W. 295. Also, that it is a status arising out of a contract entered into by two or more persons agreeing to share, as common owners, the profits of a business carried on by all or any of them on behalf of all. Marshall v. Bennett, 214 Ky. 328, 283 S. W. 115, 116.

These conditions and engagements described as required for creating a partnership, it is obvious, were not present, or the character of contract which was here entered into between Smith and Hall, when making this joint lease, and therefore the lease, not being one of partnership, was not terminated either by the sale by Smith of his tract No. 2 or the later death of the colessor, W. F. Hall.

Appellant further contends that the court improperly sustained the demurrer to the answer for two reasons: (1) Because there was a denial in the answer of the material allegations of the petition and no proof was taken to support the allegations; and (2) the affirmative allegation of the answer was that the lease contract as to the Hall tract had "ceased and determined" under the provisions of the lease.

However, in our consideration of this alleged denial, we find that it consists of denying that the lease was ever, at any time, transferred to it, or that it is the owner of said lease, or that it has ever operated under said lease, or that it has mined or shipped or is now shipping coal from the W. F. Hall lands.

It is patent, in view of the facts as hereinabove set out, that this is not a direct denial of the allegations of the petition, but is a very qualified one and in good part but a pleading of conclusions as it is admitted

that the appellant, Elcomb Coal Company, had acquired and is now operating its mines upon and within the boundaries of the lease executed in May, 1916, by reason of its having acquired same from the McComb Coal Company, the prior owner of this 1916 lease, wherein it is expressly stipulated that one-third of the royalties owing upon coal mined from within the boundary of the lease, containing the two tracts, is to be paid directly to the lessor Hall. This being true, it would constitute no answer to lessor Hall's heirs or assignees to merely claim that the coal mined by it within the leased boundary was not taken from their separately owned and particular tract thereof, where the terms of the lease are that Hall's one-third part of the royalties is payable to him upon all coal mined from any tract of land in the lease.

The prior lessee, McComb Coal Company, from which appellant acquired the lease here involved and under which it has and is now mining the coal from within said boundary, owned only this joint lease executed by Hall and Smith in May, 1916, and therefore its liability, as assignee, for royalties is measured by its terms providing therefor, from which it results that the fact, claimed by the appellant as effecting an avoidance of liability to appellee, that it has under that lease only been mining coal from tract No. 2, which was originally owned by Smith, constitutes no proper answer or defense to the plaintiff's claim for the share of the royalties which was, by the terms of the lease, to be paid to Hall, or his heirs and assigns, on the coal mined from anywhere within the boundary or either of the two tracts thereof.

Further, our opinion is, as contended by appellee, that the demurrer was properly sustained to the answer, for the reason that the rule is that a pleading will be taken as a whole and even if the first paragraph purports to be a denial of the allegations of the petition, still, if by the second paragraph the reasons set out in support of and as justifying the denial are not sufficient to support same, then the demurrer should be sustained to the whole pleading. So was it held in the late case of Kortz et al. v. Union Central Life Insurance Company, 264 Ky. 750, 95 S. W. (2d) 611, 615, where the court, in there sustaining as proper a demurrer to a like defective answer, said:

"Under the rule that a pleading will be construed

more strongly against the pleader, when the pleader denies an allegation of his adversary and then explains the denial by setting out facts in support of it, the pleading will be construed as a whole, and, unless the facts offered in support of the denial are sufficient to support a defense or cause of action, such pleading will be treated as a plea in avoidance and may be reached by a demurrer."

Such was the character of the affirmative allegation of the answer, that the lease contract as to the whole boundary had "ceased and determined" under the provisions of the lease (the supplemental lease). Such contention manifests a misconception of the character and effect of the supplemental lease made. It only purported by its express terms not to cancel, but to be only amendatory of certain terms, chiefly the provisions of paragraph 16 of the original lease, in that it extended for the lessee, the McComb Coal Co., the period of time in which to further test out the character of coal deposits contained in the Hall tract (No. 1) and provided that, in the event they did not measure up to the standard laid down in paragraph 8 of the lease, then the lease as between the lessor and lessee, as to the Hall tract (No. 1 thereof), was to terminate.

While this supplemental lease was not signed by the purchaser from Smith of his tract No. 2 embraced in the joint lease, as agreeing to the termination of the lease as to tract No. 1, still, even if effective for such purpose, it could in no way be considered as terminating the earlier lease, wherein the colessors had, for adequate consideration given in exchange among themselves, executed a joint lease, providing for a division between the lessors of royalties received from the mining of any coal embraced within the lease boundary, without regard to the tract.

Appellant's last contention is that the court erred in sustaining demurrer to the counterclaim, alleging that the pleadings showed that the appellant had paid money to the appellee through mistake of law and fact and for which no consideration was received by payor. This contention, for the reasons hereinabove stated, is clearly untenable.

It is unnecessary to enter into an extended discussion of this point, in that it appears that the money

sought to be recovered, as having been paid under mistake of law and fact, could not have been so paid, for the reason that the money paid was owing by the appellant lessee to the appellee, Hall Land & Mining Company, under the terms of the lease and which it, as well as the earlier holders of this 1916 lease, had been accustomed, according to its terms, to pay over to Hall or his heirs and assigns; that is, one-third of the royalties owing upon the coal mined from within this boundary, during which time no mining operations had been conducted on the Hall tract (No. 1) nor any coal taken therefrom as constituting the consideration or grounds for the payment of the one-third part of the royalties owing for coal mined only from the Smith tract to the plaintiff.

Clearly this last contention is especially wanting in merit.

We are, therefore, for the reasons hereinabove indicated, led to conclude that the ruling of the trial court, in sustaining the demurrer to the answer and the amended answers and counterclaims, and in granting recovery, under the lease, of one-third part of the royalties, was not erroneous but altogether proper, and for such reason, its ruling being in conformity with our views as herein expressed, the same is approved and affirmed.